[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

--------------

Nos. 07-14966 & 07-15951

--------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 19, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-02897 CV-JOF-1

ADVENTURE OUTDOORS, INC.,
a Georgia Corporation,
WALLACE AND WALLACE, INC.,
a Georgia Corporation, et al.,

                                            Plaintiffs-Appellees,

versus

MICHAEL BLOOMBERG,
Mayor of the City of New York, in His
Capacity as Mayor of New York City, and
individually,
NEW YORK CITY, a New York Corporation, et al,

                                            Defendants-Appellants.

--------------

Appeal from the United States District Court
for the Northern District of Georgia

--------------

(December 19, 2008)

Before DUBINA, HULL and FAY, Circuit Judges.

DUBINA, Circuit Judge:

In this state-law libel and negligence action, the Appellants—officials from New York City and various investigators hired by the City to conduct investigations in Georgia—appeal the district court's order concluding that Georgia privilege law applies to this case and that Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute does not apply in federal court. Because we conclude from the record that this state-law tort action does not provide a sufficient basis for the exercise of federal subject matter jurisdiction, we do not reach the issues raised by the Appellants. We reverse the district court's finding of federal subject matter jurisdiction and remand this case to the district court with instructions that the district court remand this case to the state court from which it was removed.

## I. BACKGROUND

This lawsuit stems from a wide-reaching investigation of firearms dealers conducted by New York City officials concerned about the use of illegally purchased firearms in New York. These officials believed that a handful of gun dealers were engaging in illegal practices, such as knowingly permitting straw purchase transactions, and that a large number of the guns purchased in these

2

illegal transactions were transferred to New York City. Straw purchase transactions involve the purchase of a firearm by an individual legally eligible to make the purchase (the straw) with the intent to immediately transfer the gun to another individual who is legally ineligible to purchase the weapon (the actual purchaser). In order to ascertain whether certain gun dealers were willing to participate in such illegal sales, New York officials hired private investigators to simulate straw purchases.

On April 8, 2006, two investigators hired by the City of New York, one male and one female, entered Adventure Outdoors, a Georgia firearms dealer, and simulated a straw purchase. The male investigator consulted with an Adventure Outdoors salesperson and selected a Glock 9 mm handgun for purchase. At that time, the male investigator summoned the female investigator, who had not participated in the selection of the firearm, and she filled out the required paperwork, including Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Form 4473. The store ran a background check on the female investigator, and the transaction was completed.

Following their investigation, the New York City officials held a press conference to announce the filing of a civil action against numerous gun dealers, including Adventure Outdoors. At this press conference, the New York officials

3

accused the gun dealers of violating federal law, making statements such as the following:

- "–and most are sold by a small [group] of rogue gun dealers *who refuse to obey federal laws*."

- "*caught them* . . . *breaking the Federal laws regulating gun Sales*."

- "group of bad apples *who routinely ignore federal regulations*."

- "*stop your illegal conduct* or you too will face this kind of penalty"; and

- ". . . holding gun dealers *who break the law* accountable . . . ."

*Adventure Outdoors v. Bloomberg*, 519 F. Supp. 2d 1258, 1282 (N.D. Ga. 2007).

After the press conference and the filing of the New York City officials' lawsuit in the Eastern District of New York ("the New York action"), Adventure Outdoors, Inc.; Jay Wallace; and Cecilia Wallace (referred to collectively as "plaintiffs") filed suit in the Superior Court of Cobb County, Georgia ("the Georgia action") against New York City; Michael Bloomberg, the mayor of New York City; Michael A. Cardozo, Corporation Counsel of the City of New York; Raymond Kelly, Chief of Police of the New York Police Department; and John Feinblatt, Criminal Justice Coordinator of New York City (referred to collectively as "New York defendants" and "defendants"). In the Georgia action, the plaintiffs also named as defendants Nooner Investigative Group; Tanya Marie Nooner, a

4

Georgia resident and the principal of Nooner Investigative Group; Melissa Merced, of Nooner Investigative Group; Joseph Tounsel, of Nooner Investigative Group; James Mintz, principal of The James Mintz Group; and The James Mintz Group (referred to collectively as "Georgia defendants" and "defendants").

The complaint in the Georgia action contains six counts. Count One sets forth a number of allegedly defamatory statements made by the defendants. Counts Two and Three state identical claims for gross negligence and negligence, respectively. In the negligence-related counts, the plaintiffs contend that the New York defendants should have consulted their lawyers to ascertain the alleged illegality of their investigative scheme. The plaintiffs also claim that the New York defendants easily could have discovered the legality of the plaintiffs' operations by (a) investigating whether 21 guns used in New York crimes were negligently or unlawfully sold by Adventure Outdoors; (b) contacting the ATF to inquire into the plaintiffs' previous cooperation with law enforcement efforts; (c) contacting the plaintiffs directly to inquire into the safeguards that were in place at Adventure Outdoors to prevent unlawful firearms sales; and (d) debriefing the Georgia defendants to determine why the Adventure Outdoors salesperson asked the female investigator to initial the straw purchaser paragraph of ATF Form 4473 during the simulated straw purchase. Count Four contains allegations of aiding

and abetting, and Count Five alleges that Mayor Bloomberg committed "special violations" that were both defamatory and grossly negligent when he met with the mayor of Atlanta to enlist her support for the New York City investigation. While not labeled as such, the complaint also contains what amounts to a sixth count, an allegation of tortious interference with business relations.

The defendants removed the Georgia action to the United States District Court for the Northern District of Georgia where they sought to have the action dismissed on a number of different grounds, or in the alternative, transferred to the Eastern District of New York. In response, the plaintiffs filed a motion to remand and opposed the defendants' motion to dismiss. The district court found that federal jurisdiction was proper, dismissed the plaintiffs' negligence-related claims, denied dismissal on the claims for tortious interference with business relations and defamation, and declined to transfer the case. In addition, the court concluded that Georgia's anti-SLAPP statute does not apply to an action removed to federal court and that Georgia's privilege law governs the plaintiffs' claims. This court granted the defendants an interlocutory appeal on the anti-SLAPP and privilege rulings.

## II. STANDARDS OF REVIEW

We review subject matter jurisdiction *de novo*. *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1242 (11th Cir. 2007). Likewise, we review *de*

*novo* federal-versus-state, or *Erie*,[1] choice-of-law questions, *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002), and state-versus-state choice-of-law questions, *AIG Baker Sterling Heights, L.L.C. v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 999 (11th Cir. 2007).

## III. ANALYSIS

A. *Applicable Law*

"A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). The existence of federal jurisdiction is tested at the time of removal. *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1332 (11th Cir. 1998). In determining whether jurisdiction exists under 28 U.S.C. § 1331, a court must look to the well-pleaded complaint alone. *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 43 (1908). Thus, to meet their burden, the defendants must show that the plaintiffs' complaint, as it existed at the time of removal, provides an adequate basis for the exercise of federal jurisdiction. Although the plaintiffs

---

[1] *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938).

7

bring claims solely under state law, the defendants argue that federal jurisdiction nonetheless is proper under the substantial-federal-question jurisdiction doctrine.

In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 805–06, 106 S. Ct. 3229, 3231 (1986), the plaintiffs brought a state-law tort claim against a drug manufacturer, alleging that the defendant's failure to comply with the branding provision of the federal Food, Drug, and Cosmetic Act ("FDCA") constituted negligence. In determining that federal jurisdiction was not appropriate, the Supreme Court placed special emphasis on the fact that Congress had not provided for a private cause of action under the FDCA: "the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 814, 106 S. Ct. at 3235.

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363 (2005), the Supreme Court retreated somewhat from *Merrell Dow*'s focus on the availability of a federal private right of action and established a new test for determining whether a state-law cause of action gives rise to federal jurisdiction. Five years after the Internal

Revenue Service ("IRS") seized and sold the plaintiff's real property to the defendant at a tax sale, the plaintiff brought a quiet title action against the defendant in state court, alleging that the IRS had given deficient notice of seizure under 26 U.S.C. § 6335. *Grable*, 545 U.S. at 310–11, 125 S. Ct. at 2366. The defendant subsequently removed the case to federal district court on the basis that plaintiff's claim of title depended on interpretation of a federal tax statute. *Id.*

Faced with the question whether removal to federal court was appropriate, the Court reviewed its substantial-federal-question precedent, highlighting two important themes in the cases. First, the Court acknowledged the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 312, 125 S. Ct. at 2367. Second, recognizing the important role that Congress plays in defining the boundaries of federal subject matter jurisdiction, the Court emphasized the need to consider "congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313–14, 125 S. Ct. at 2367. To accommodate both of these concerns, the Court fashioned the following test: "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed

9

and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[?]" *Id.* at 314, 125 S. Ct. at 2368.

Applying its newly formulated test, the Court held that the plaintiff's quiet title claim warranted federal jurisdiction because "[t]he meaning of the [disputed] federal tax provision [was] an important issue of federal law that sensibly belong[ed] in federal court," and the exercise of federal jurisdiction would "portend only a microscopic effect on the federal-state division of labor." *Id.* at 315, 125 S. Ct. at 2368. The Court reached this conclusion despite the fact that the federal tax provision at issue did not provide a private right of action, rejecting a broad reading of *Merrell Dow.* According to the *Grable* Court, "*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of" congressional judgment concerning the proper balance between state and federal jurisdiction. *Id.* at 318, 125 S. Ct. at 2370. Furthermore, because state tort claims frequently involve alleged violations of federal law, "[a] general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 319, 125 S. Ct. at 2370–71.

In *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682–83, 126 S. Ct. 2121, 2127 (2006), the plaintiff, an insurance carrier that administered a health plan for federal employees under the Federal Employees Health Benefits Act, sued a former plan beneficiary for reimbursement of claims previously paid after the plan beneficiary recovered damages from a third party in the settlement of a state tort action relating to those claims. The *Empire Healthchoice* Court explained that the *Grable* test carves a "special and small category" of cases out of state court jurisdiction over state-law claims. *Empire Healthchoice*, 547 U.S. at 699, 126 S. Ct. at 2136. Concluding that the reimbursement claim at issue in *Empire Healthchoice* was "poles apart" from the quiet title claim in *Grable*, the Court highlighted several factors that supported the exercise of jurisdiction in *Grable*: "The dispute there centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *Id.* at 700, 126 S. Ct. at 2137. In addition, *Grable* involved a "nearly pure issue of law." *Id.* (internal quotation marks omitted). Because the dispute in *Empire Healthchoice* was between private parties, the federal issue was not dispositive of the case, and the reimbursement claim was

11

"fact-bound and situation-specific," the Court held that federal jurisdiction was inappropriate. *Id.* at 700–01, 126 S. Ct. at 2137.

To determine whether the present case warrants federal jurisdiction, we must evaluate whether the plaintiffs' state-law tort claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities," *Grable*, 545 U.S. at 314, 125 S. Ct. at 2368, keeping in mind that the Supreme Court has explained that "*Grable* exemplifies" a "slim category" of cases, *Empire Healthchoice*, 547 U.S. at 701, 126 S. Ct. at 2137.

B. *Plaintiffs' Negligence-Related Claims*

The district court concluded that the plaintiffs' identical claims for negligence and gross negligence raise disputed federal issues, reasoning that resolution of these claims would require consideration of whether the Georgia defendants broke federal law by simulating a straw purchase. After carefully reviewing the allegations contained in the plaintiffs' complaint, we are not persuaded that the negligence-related claims "necessarily raise a stated federal issue." *Grable*, 545 U.S. at 314, 125 S. Ct. at 2368.

12

The negligence-related counts of the plaintiffs' complaint contain allegations that the New York defendants made a number of negligent omissions during their investigation.  Broadly stated, the plaintiffs allege that the New York defendants failed to investigate the plaintiffs' operations thoroughly.  In addition, the plaintiffs claim that the New York defendants either failed to consult their lawyers regarding the legality of simulated straw purchases or ignored their lawyers' advice on the subject.  The district court viewed the allegation of a failure to consult counsel as an allegation of "negligent failure to appreciate the allegedly illegal nature of the 'sting' operations." *Adventure Outdoors v. Bloomberg*, 519 F. Supp. 2d at 1275.

Under Georgia law, a plaintiff must prove the following elements to recover on a claim for negligence:

"(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty."

*Bradley Ctr., Inc. v. Wessner*, 250 Ga. 199, 200, 296 S.E.2d 693, 695 (1982)

(quoting *Lee St. Auto Sales, Inc. v. Warren*, 102 Ga. App. 345, 345, 116 S.E.2d

243, 245 (1960)).

The plaintiffs' complaint does not identify the source of the legal duty they

are invoking, but any conceivable legal duty the New York defendants owed the

plaintiffs exists independently of federal law.  Furthermore, whether the New York

defendants committed the alleged breaches is a factual matter that can be resolved

without applying federal law.

The district court noted that the plaintiffs do not specify with precision the

nature of their damages in the negligence-related counts of the complaint.

However, the district court concluded that the plaintiffs' claim for tortious

interference with business relations supplies the necessary articulation of

damages–harm to the plaintiffs' business.  Adopting this articulation of damages

for the purpose of evaluating jurisdiction,[2] we conclude that the elements of

causation and damages do not raise a federal issue in this case.  The relevant

inquiry for causation purposes is what action the New York defendants would

have taken pursuant to a more careful and thorough investigation, not whether the

---

[2] We express no opinion whether the district court correctly concluded that the plaintiffs' negligence claims are barred by the "economic loss" rule or whether the plaintiffs' complaint alleges any damages cognizable in a negligence action.

14

plaintiffs are law-abiding gun dealers or the simulated straw purchase itself was illegal.  In other words, proof of causation does not require resolution of an issue of federal law.

In addition to alleging investigatory errors, the plaintiffs' gross negligence count also states that "[t]he actions of the Georgia Defendants provided for the New York Defendants a core basis upon which the New York Defendants acted and thus contributed directly to the Gross Negligence."  Compl. ¶ 31(E).  Perhaps seizing upon this language, the defendants argue that the plaintiffs' non-defamation claims are based on allegations of fraudulent conduct and that the plaintiffs must prove that the Georgia defendants lied on a federal form in order to establish this alleged fraud.  The defendants' argument fails for two reasons.  First, the Georgia defendants' execution of the simulated straw purchase served as the basis for the New York defendants' allegedly defamatory statements about the plaintiffs.  Thus, the allegation that the Georgia defendants provided a core basis for the actions of the New York defendants more properly relates to the plaintiffs' defamation claims than their negligence claims.  Second, the plaintiffs have not sued the defendants for fraud, and as discussed above, the essence of the plaintiffs' negligence claims is the degree of care exercised by the New York defendants, not the legality of the actions of the Georgia defendants.

15

Because we do not believe that the plaintiffs' negligence-related claims necessarily raise a federal issue, we conclude that the negligence-related claims do not provide a sufficient basis for the exercise of federal jurisdiction.

C. *Plaintiffs' Defamation Claims*

The district court concluded that the plaintiffs' defamation claims raise a disputed federal issue, reasoning that resolution of these claims would require consideration of whether the plaintiffs broke federal law by participating in a simulated straw purchase. We agree.

The plaintiffs allege that the defendants' statements accusing the plaintiffs of violating federal gun laws constitute defamation. The defendants argue that under both federal constitutional law and Georgia law, the plaintiffs must prove the falsity of the allegedly defamatory statements in order to prevail on their claims. In *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768–69, 106 S. Ct. 1558, 1559 (1986), the Supreme Court held that First Amendment concerns mandate that a private plaintiff suing a media defendant for defamation relating to speech on a matter of public concern must prove that the statements at issue are false. Two of the justices joining the majority opinion concurred separately to express their view that the rule announced in *Hepps* should not be limited to media defendants. *Hepps*, 475 U.S. at 780, 106 S. Ct. at 1565. The plaintiffs argue that

16

this court should read *Hepps* narrowly and decline to apply its constitutional rule to their defamation claims against non-media defendants. However, this case does not require us to examine the precise contours of First Amendment doctrine because "Georgia law puts the burden of proving falsity on the plaintiff." *Straw v. Chase Revel, Inc.*, 813 F.2d 356, 361 n.6 (11th Cir. 1987). In a recent case involving internet postings by a concerned citizen, the Supreme Court of Georgia confirmed that when "a libel action involves a speech of public concern, a plaintiff must show that . . . the defamatory statement was false." *Mathis v. Cannon*, 276 Ga. 16, 21, 573 S.E.2d 376, 380 (2002) (citing *Hepps*, 475 U.S. at 776, 106 S. Ct. at 1564). The Georgia Supreme Court's recitation of the *Hepps* rule in a case involving a non-media defendant demonstrates that under Georgia law, a plaintiff alleging defamation relating to speech on a matter of public concern bears the burden of proving the falsity of the relevant statements.

The facts of this case clearly trigger the *Hepps* rule as expressed by the Supreme Court of Georgia in *Mathis*. New York City public officials made statements regarding alleged violations of federal gun laws and drew a connection between those alleged violations and the health and safety of New York citizens, a matter of public concern. To recover for defamation, the plaintiffs must prove the falsity of the defendants' statements concerning federal law, an issue which the

17

parties hotly contest. Thus, the plaintiffs' defamation claims "necessarily raise a stated federal issue, actually disputed" and satisfy the first two *Grable* requirements. *Grable*, 545 U.S. at 314, 125 S. Ct. at 2368.

Although the plaintiffs' complaint raises a contested federal issue, the nature of the dispute between the parties suggests that this issue does not meet *Grable*'s substantiality requirement. *Grable* emphasized the importance of providing a federal forum for "substantial questions of federal law." *Id.* at 312, 125 S. Ct. at 2367. In *Grable*, the "meaning of the federal statute [was] actually in dispute [and] appear[ed] to be the only legal or factual issue contested in the case." *Id.* at 315, 125 S. Ct. at 2368. The Supreme Court has subsequently confirmed that a crucial factor supporting the result in *Grable* was the presence of a "nearly pure issue of law." *Empire Healthchoice*, 547 U.S. at 700, 126 S. Ct. at 2137 (internal quotation marks omitted). Unlike *Grable*, *Empire Healthchoice* presented a "fact-bound and situation-specific" issue; thus, federal jurisdiction was inappropriate in the latter case. *Id.* at 701, 126 S. Ct. at 2137.

The Seventh Circuit recently emphasized this distinction between factual and legal issues when it held that a federal court could not exercise jurisdiction over an Illinois state tort claim stemming from an aviation accident: "What the Court said about *Grable* in *Empire Healthchoice* can be said here too. We have a

18

fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law." *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007); *see also Singh v. Duane Morris LLP*, 538 F.3d 334, 339 (5th Cir. 2008) (finding federal jurisdiction inappropriate where "federal issue [did not require] resolution of an important question of law" but was "predominantly one of fact").

In contrast, the Federal Circuit recently upheld federal jurisdiction over a state malpractice action stemming from patent litigation, declaring that "*Grable* did not hold that only state-law claims that involve constructions of federal statute or pure questions of law belonged in federal court." *Air Measurement Tech., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1272 (Fed. Cir. 2007). These cases are not necessarily inconsistent. We do not read *Bennett* or *Singh* to say that only pure legal issues can trigger substantial federal question jurisdiction, but rather that resolution of pure issues of federal law provides the strongest basis for "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312, 125 S. Ct. at 2367. Furthermore, *Air Measurement Technologies* is best understood in the context of patent law, an area in which the federal courts undoubtedly have special competence. In any event, Supreme Court precedent and the law of our sister

19

circuits place a strong, if not dispositive, emphasis on the character of the disputed federal issue in evaluating the propriety of substantial federal question jurisdiction.

In the present case, the defendants characterize their disagreement with the plaintiffs over the legality of the plaintiffs' conduct as a dispute over the meaning of federal law. Focusing on a videotape that purportedly documents the plaintiffs' participation in a simulated straw purchase, the defendants contend that the factual basis for the alleged violations of federal law is not at issue. In their view, resolution of the federal issue turns on whether federal law prohibits the plaintiffs' purportedly undisputed conduct. But the defendants mischaracterize the nature of the dispute.

The plaintiffs vehemently contest the defendants' version of the facts, taking issue with the notion that the defendants' videotape documents all of the relevant conduct and asserting that the Georgia defendants fraudulently induced the Adventure Outdoors salesperson to make the sale at issue. In our view, this allegation of fraudulent inducement does not amount to an argument about the meaning of federal law. Instead, we read the plaintiffs' complaint to say that the Georgia defendants deceived the plaintiffs by representing that the female undercover agent was the actual purchaser of the firearm and that the plaintiffs had

no knowledge that they were participating in a straw purchase, simulated or otherwise. If this case were to reach trial, resolution of the plaintiffs' claims ultimately would require an evaluation of this factual argument. To be sure, the jury would have to apply federal law to reach its decision. But as the Supreme Court explained in *Grable*, the federal courts have rejected the "expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." *Grable*, 545 U.S. at 313, 125 S. Ct. at 2367.

Furthermore, we are not persuaded that the meaning of the relevant federal law is unclear. Here, the defendants correctly concede that federal law prohibits participation by both buyers and sellers in straw purchases of firearms. *See United States v. Ortiz*, 318 F.3d 1030, 1038–39 (11th Cir. 2003) (upholding conviction of individual acting as straw purchaser); *United States v. Nelson*, 221 F.3d 1206, 1209–11 (11th Cir. 2000) (upholding conviction of "actual buyer" in straw purchase transaction); *United States v. Brooks*, 611 F.2d 614, 616 (5th Cir. 1980)[3] (upholding conviction of seller in straw purchase transaction). However, the

_____

[3] The current Fifth Circuit has overruled *Brooks* on other grounds. *United States v. Henry*, 749 F.2d 203, 206 & n.2 (5th Cir. 1984) (en banc). Upon the creation of this Circuit, we adopted as binding precedent all the decisions of the former Fifth Circuit announced prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). We are not bound by subsequent decisions of the new Fifth Circuit, and *Brooks* remains good law in the Eleventh Circuit. *United States v. Blanton*, 793 F.2d 1553, 1559 & n.6 (11th Cir. 1986).

21

defendants argue that it is unclear whether federal law prohibits sales to straw purchasers in the context of this case, focusing specifically on whether participation in a simulated straw purchase is illegal. The defendants are mistaken; federal courts have upheld numerous convictions for dealer participation in simulated straw purchases. *See, e.g.*, *United States v. Inglese*, 282 F.3d 528 (7th Cir. 2002); *United States v. Rietzke*, 279 F.3d 541 (7th Cir. 2002); *United States v. Straach*, 987 F.2d 232 (5th Cir. 1993); *United States v. Brooks*, 611 F.2d 614 (5th Cir. 1980).

Two other factors central to *Grable*'s substantiality analysis–the importance of the government's interest in the disputed federal tax provision and the ability of a federal agency to vindicate its action in federal court–weigh against finding a substantial federal question in this case. *See Grable*, 545 U.S. at 315, 125 S. Ct. at 2368. The federal government unquestionably has a strong interest in the uniformity and consistency of federal criminal law. *See Tafflin v. Levitt*, 493 U.S. 455, 465, 110 S. Ct. 792, 798 (1990) (commenting that "concern with the need for uniformity and consistency of federal criminal law is well taken"). However, state court application of federal criminal law in the civil context does not pose a serious threat to this federal interest. If the state court were to exercise jurisdiction here, the federal courts still "would retain full authority and responsibility for the

22

interpretation and application of federal criminal law, for they would not be bound by [the] state court interpretation[]" of the federal gun statutes. *Id.* In resolving the federal issue, the state court would "be guided by federal court interpretations of the relevant federal criminal statutes." *Id.* As previously noted, federal law provides clear guidance in this case. Additionally, the plaintiffs have not challenged the actions of the ATF, the federal agency charged with enforcing the gun laws. Thus, this case is unlikely to impact the federal government's interests or its ability to vindicate those interests through administrative action.

In *Empire Healthchoice*, the Court emphasized that the legal issue in *Grable* "was both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice*, 547 U.S. at 700, 126 S. Ct. at 2137. The federal issue posited by the defendants here does not dispose of this case. If the trial court rules that participation in simulated straw purchases is illegal, the plaintiffs are free to argue, as a factual matter, that they believed the female investigator posing as a straw purchaser was the actual purchaser of the firearm. If the trial court concludes that federal law does not prohibit participation in simulated straw purchases, the plaintiffs still must show, among other things, that the defendants' statements were not privileged.

23

In addition, the state court interpretation of the gun statutes will not be controlling in numerous other cases because it will not have precedential effect in the federal system. *See Tafflin*, 493 U.S. at 465, 110 S. Ct. at 798 (noting that federal courts are not bound by state court interpretations of federal criminal statutes). In declining to exercise federal jurisdiction over a state-law shareholder suit implicating issues of federal tax law, the Sixth Circuit recently stated:

> While the federal government may have an interest in the uniform application of regulations that relate to the collection of taxes, it has only a limited interest in private tort or contract litigation over the private duties involved in that collection. The government's ability to collect taxes from an individual shareholder or corporation is not affected by the resolution of the dispute between these two parties. The government is free to interpret and apply the tax code as it sees fit, without the slightest regard for this lawsuit. Unlike *Grable*, in which the IRS's prevailing practice was alleged to violate due process, this case will have no *res judicata* effect that would apply to the IRS, no matter which court, federal or state, decides the case.

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (en banc) (internal citation omitted). The same is true here. The federal government has a limited interest in this private tort action over private duties tangentially related to

the federal gun laws, and the federal government may continue to enforce federal gun laws and regulations without concern for the outcome of this lawsuit. Because the ATF is not a party to this suit, the outcome cannot possibly have any res judicata effect that would apply to the ATF or any other arm of federal law enforcement.

In our view, the plaintiffs' defamation claims do not raise a substantial issue of federal law. The dispute between the parties concerns the factual basis for the defendants' statements accusing the plaintiffs of violating federal law. Clear federal guidance exists on every question of federal law relevant to evaluating the falsity of those statements. "We are mindful that state courts are generally presumed competent to interpret and apply federal law." *Id.* at 560. While this case does raise an important federal issue, the federal issue in this case does not implicate in a significant way the concerns that supported the exercise of federal jurisdiction over the state-law claim in *Grable*. In other words, "[t]he pertinent finding, which leads to our present conclusion, is that the federal interest in this case is not 'substantial' as that term has been defined under the prevailing Supreme Court precedent." *Id.* at 572.

Our decision here is not inconsistent with our previous decision in *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000). In that case, a group of

plaintiffs brought suit under Georgia's civil RICO statute, O.C.G.A § 16-14-1 *et seq.*, alleging violations of the federal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341, 1342, which are predicate offenses constituting racketeering under Georgia's RICO statute. *Ayres*, 234 F.3d at 516. The plaintiffs argued that the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. § 30118 *et seq.*, created a duty of disclosure, and that the defendants' failure to make disclosures under the Safety Act constituted federal mail and wire fraud. *Id.* at 517. We held that whether "a breach of the disclosure duty under the Safety Act constitutes a federal mail and wire fraud crime . . . constitutes a federal question which may be substantial enough to confer federal question jurisdiction." *Id.* at 519. However, we declined to "hold that *every* state RICO cause of action which depends upon proving, as necessary predicate acts, a violation of the federal mail and wire fraud statues establishes federal question jurisdiction." *Id.* Instead we surmised that the "particular controversy in [*Ayres*] may very well [have made it] one of those exceptional cases" in which the exercise of federal jurisdiction over a state-law cause of action is appropriate. *Id.*

We believe that the federal question in *Ayres* was more substantial than the federal issue in the case *sub judice*.[4] *Ayres* involved two levels of federal questions. The need to construe independent bodies of federal law and to determine the legal effect of the interaction of those two bodies of law made the federal question in *Ayres* far more substantial than the one presented by Adventure Outdoors's defamation claim.

The fourth factor of the *Grable* test, the "congressionally approved balance of federal and state judicial responsibilities," also weighs against upholding federal jurisdiction in the present case. *Grable*, 545 U.S. at 314, 125 S. Ct. at 2368. As the Court in *Grable* explained, "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto" when it will upset the balance between federal and state judicial responsibility envisioned by Congress. *Id.* at 313–14, 125 S. Ct. at 2367. The *Grable* Court held that "because it will be the rare state title case that raises a contested matter of federal law," the exercise of federal jurisdiction would

---

[4] We entered our decision in *Ayres* prior to the Supreme Court's decision in *Grable*; hence, we did not conduct a substantiality analysis along the lines suggested in *Grable* and *Empire Healthchoice*. We express no opinion whether the issue in *Ayres* would qualify as substantial under *Grable*, but merely conclude that the federal issue in the present case is not as substantial as the federal question in *Ayres*.

27

"portend only a microscopic effect on the federal-state division of labor." *Id.* at 315, 125 S. Ct. at 2368. The same cannot be said for state defamation claims.

Our concern is that by authorizing the exercise of federal jurisdiction here, we would open the doors of the federal courts in this circuit whenever a defamation defendant accuses a plaintiff of violating federal law. Although *Grable* retreated from *Merrell Dow*'s nearly exclusive focus on a private right of action, *Grable* made clear that the absence of a federal private right of action still should be treated as evidence relevant to congressional judgment concerning the proper balance between state and federal jurisdiction. *Id.* at 318, 125 S. Ct. at 2370. *Merrell Dow*'s rationale applies forcefully to state tort claims that involve allegations of federal criminal violations. Congress has given the federal district courts exclusive original jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231 (2006). However, this jurisdictional provision does not amount to authorization of a federal private right of action any time a civil plaintiff invokes a federal criminal statute. The defendants have not drawn this court's attention to any provision of the federal criminal law that expresses a congressional intent to remove state defamation cases from state court jurisdiction.

In our view, the balance of state and federal jurisdictional responsibilities most consistent with clearly expressed congressional intent is state court resolution of state tort claims and federal court resolution of federal criminal prosecutions.

Here too, our decision in *Ayres* is distinguishable. In *Ayres*, we concluded that the federal mail and wire fraud statutes "are enforceable through a private federal RICO action." *Ayres*, 234 F.3d at 519 n.8 (citing 18 U.S.C. §§ 1961(1)(B), 1962, 1964(c)). Our conclusion in *Ayres*–that Congress had provided a private right of action for individuals injured by federal mail and wire fraud crimes–is evidence that the congressionally mandated jurisdictional balance between federal and state courts supported a finding of jurisdiction in that case. Such evidence is lacking in the present case.

## IV. CONCLUSION

For the reasons set forth above, we conclude that the district court's denial of the plaintiffs' motion to remand merits reversal. Accordingly, we reverse the district court's order and remand this case to the district court with instructions to remand the case to the state court from which it was removed.

**REVERSED AND REMANDED.**