[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13314
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 30, 2012
JOHN LEY
CLERK

D. C. Docket Nos. 0:09-cv-60832-CMA; 0:07-bkc-01597-JKO

In Re:     JULIE ANNE CARLSON,
           GARY ANDREW CARLSON,

                                              Debtors.

_____

WASHINGTON MUTUAL BANK,

                                              Plaintiff-Appellee,

                          versus

JULIE ANN CARLSON,
GARY ANDREW CARLSON,

                                              Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 30, 2012)

Before DUBINA, Chief Judge, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

This appeal follows the district court's bench trial and final judgment in favor of Plaintiff-Appellee, Washington Mutual Bank and against Defendants-Appellants, Julie Carlson and Gary Carlson. The Carlsons argue that (1) Washington Mutual's claims are barred by *res judicata*; (2) the bankruptcy and district courts lacked subject matter jurisdiction over the Minnesota state law claims against the non-debtor, Gary; (3) the district court erred in denying the Carlsons' summary judgment motion on several claims because Washington Mutual did not justifiably or reasonably rely upon their fraudulent statements and documents; and (4) the district court abused its discretion in denying the Carlsons' motion to continue the trial.

## I.

In December 2004 and January 2005, Julie and Gary Carlson sought a home mortgage refinance loan from Washington Mutual Bank in the amount of $2,090,000. The Carlsons wanted the new loan to satisfy an existing primary mortgage on their former Minnesota home. Two other junior mortgages, however, encumbered the property: a second mortgage in the original principal amount of $250,000 in favor of Associated Bank, and a third mortgage in the original

principal amount of $500,000 in favor of Washington County Bank. When a title search revealed the second and third mortgages, Washington Mutual conditioned the refinance loan upon its obtaining priority status as the first mortgagee. The Carlsons made written representations that the junior mortgages in favor of Associated and Washington County Banks were already satisfied or would be satisfied. At closing, two satisfactions of mortgage were presented showing that these other mortgages had been paid off. After closing, Washington Mutual discovered that the satisfactions were forgeries; consequently, Washington Mutual was third in line among the mortgagees.

The Carlsons contend that they were not responsible for any wrongdoing in applying for or closing their refinance loan from Washington Mutual. However, the Carlsons gave their mortgage broker a Rolex watch prior to closing, and the Carlsons received an undisclosed kickback payment from the broker after closing. Therefore, it can be inferred that either the Carlsons, or someone acting at the Carlsons' direction, provided forged documents and false information to Washington Mutual.

After refinancing, the Carlsons moved from Minnesota to Florida and defaulted on their note with Washington County Bank. Washington County foreclosed on the property in December 2006, and the home was sold at a sheriff's

3

sale. Washington Mutual had to redeem the property and satisfy the second mortgage in favor of Associated Bank. Washington Mutual's losses exceeded $1.1 million.

On May 8, 2007, Julie Carlson petitioned for Chapter 7 bankruptcy in the Southern District of Florida. In August 2007, Washington Mutual filed an adversary proceeding seeking judicial determination of the non-dischargeability of Julie's debt under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(6) (Claims I, II, and III); damages against Julie and Gary for fraud/misrepresentation, negligent misrepresentation, and breach of contract (Claims IV, V, VI); and attorneys' fees (Claim VII).

Gary Carlson requested summary judgment on claims IV-VII, arguing that the bankruptcy court lacked subject matter jurisdiction under 28 U.S.C. § 1334(b); Gary and Julie further argued for summary judgment in their favor on claims I, II, IV, and V because Washington Mutual did not justifiably rely, as a matter of law, on false representations and documents which were contrary to public records on their property. The bankruptcy court denied the Carlsons' motion for summary judgment on December 12, 2008. The district court denied them leave to appeal that order.

In the spring of 2011, after the bankruptcy court's resolution of pretrial matters and second referral of the case to the district court for trial, the Carlsons filed a motion to continue the trial because of Gary's health limitations. The Carlsons informed the court that if it denied their motion, they would not be prepared for trial or able to put forward an adequate defense. The court denied the motion to continue, citing, *inter alia*, the chronic nature of Gary's health condition, the unlikelihood that his health would improve before a later trial date, and Gary's demonstrated ability to communicate with the court and attend hearings.

After a bench trial, the district court entered judgment against the Carlsons and in favor of Washington Mutual. The judgment awarded $1,270,237.47 in damages, ruled that Julie's debt to Washington Mutual was not dischargeable in her bankruptcy pursuant to 11 U.S.C.§§ 523(a), taxed costs against the Carlsons, and granted Washington Mutual's request for attorneys' fees. The Carlsons then perfected this appeal.

## II.

### A. *Res judicata* does not bar Washington Mutual's claims.

The Carlsons argue that because they and Washington Mutual were parties to a lawsuit in Minnesota state court concerning the same loans, mortgages, and

property at issue in this case, *res judicata* barred Washington Mutual's adversary proceeding. A district or bankruptcy court's decision concerning application of *res judicata* presents a legal question which we review *de novo*. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001). It is undisputed that the Minnesota state court proceeding did not dispose of any claim raised in Washington Mutual's instant complaint. Moreover, cross-claims are not compulsory in Minnesota state courts. Minn. R. Civ. P. 13.07 ("A pleading *may* state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter . . . of the original action. . . .") (emphasis added). Additionally, any state court would lack jurisdiction over the claims concerning the non-dischargeability of Julie's debt. *See In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993) ("dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction"). For all of these reasons, we conclude that the bankruptcy court did not err in finding that *res judicata* did not bar Washington Mutual's claims against the Carlsons.

**B. The bankruptcy and district courts had subject matter jurisdiction over the state law claims against Gary.**

Gary argues that the bankruptcy court lacked subject matter jurisdiction over Washington Mutual's claims against him because he was not a debtor in the bankruptcy case, and the outcome of these claims against him would have had no effect on Julie's bankruptcy estate or her discharge. "An appellate court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (internal quotation marks omitted). We review subject matter jurisdiction *de novo. Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008).

A district court may refer to the bankruptcy court any action "arising under . . . or arising in . . . or related to a case under [the bankruptcy code]." 28 U.S.C. §§ 157(a), 1334(b). "The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the [bankrupt estate.] The proceeding need not necessarily be against the debtor or the debtor's property." *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (internal alteration omitted). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action . . . and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* at 1270–71. Because the outcome of the adversary

7

proceeding as against Gary conceivably could have affected Julie's liabilities, her rights in jointly owned assets, and/or the bankrupt estate's administration, we conclude that the bankruptcy court correctly found that it had "related to" jurisdiction over Washington Mutual's state law claims against Gary.

Additionally, insofar as Gary argues that the district court lacked subject matter jurisdiction, we conclude that the district court correctly found that it had federal question jurisdiction over the non-dischargeability claims pursuant to 28 U.S.C. § 1331, and diversity jurisdiction and supplemental jurisdiction over the Minnesota state law claims pursuant to 28 U.S.C. §§ 1332 and 1367, respectively.

**C. We will not review the district court's denial of summary judgment.**

On appeal, the Carlsons assert that the district court erred in denying their motion for summary judgment. At summary judgment, the Carlsons argued that the bankruptcy court should have dismissed Claims I, II, IV, and V because Washington Mutual, as a matter of law, could not have justifiably or reasonably relied on the Carlsons' fraudulent representations. The Carlsons contend we should apply the *de novo* standard of review. Washington Mutual responds that we may only review for clear error because the court made factual findings on the justifiable reliance issue at trial.

However, we will not review the court's denial of the summary judgment motion at this stage in the proceedings. "[T]his Court will not review the pretrial denial of a motion for summary judgment after a full trial and judgment on the merits." *Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1286 (11th Cir. 2001). The Supreme Court has recently upheld this rule. *See Ortiz v. Jordan*, ____ US. _____, 131 S. Ct. 884, 889 (2011) (reasoning that "the full record developed [at trial] supersedes the record existing at the time of the summary judgment motion"). Thus, we will not consider the Carlsons' argument that the bankruptcy court erroneously denied their motion for summary judgment. The Carlsons do not challenge the district court's factual findings, so we have no reason to review the justifiable reliance issue any further.

**D. The district court did not abuse its discretion in denying the Carlsons' motion to continue the trial.**

Finally, the Carlsons contend that the district court improperly denied their motion to continue the trial. They requested a 90 day continuance to aid Gary's mental and physical rehabilitation so that he would be able to attend trial and help prepare his defense. On June 3, 2011, the district court entered its order denying the Carlsons' motion. The district court explained that the bankruptcy court found, after reviewing statements from Gary's doctor, that Gary could participate

9

at trial. The court noted the bankruptcy court's observation that the parties represented that they were prepared for trial two-and-a-half years earlier. Considering the chronic nature of Gary's condition, the court found it unlikely that his ability to participate in trial would be improved by surgery. The court also reasoned that Gary was not actually scheduled for surgery before or during trial, and it would be unlikely that Gary could schedule surgery within the following few weeks. In the event that Gary's infirmity prevented his appearance at trial, the court noted that reading his deposition testimony into the record would be permissible. The court further found that continuance would result in expense and prejudice to Washington Mutual. Finally, the court reasoned that Gary demonstrated his ability to write the court a coherent, *ex parte* letter; consequently, he was capable of communicating with his attorneys to prepare for trial.

We review a district court's denial of a motion for continuance for abuse of discretion. *United States v. Graham*, 643 F.3d 885, 893 (11th Cir. 2011). We apply a four part standard to determine whether a court abused its discretion in denying a continuance. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1350–51 (11th Cir. 2003). We consider (1) the extent of the appellant's diligence in preparing his or her defense before the hearing date; (2) the likelihood that the need for a continuance would have been met had the continuance actually

been granted; (3) the extent to which the continuance would have burdened the court, the opposing party, and its witnesses; and (4) the extent to which the appellant suffered harm because of the court's denial. *Id*. at 1351.

Applying these factors to the instant case, we conclude that the district court reasonably determined that (1) the Carlsons had ample time to ready a defense; (2) Gary would not have been better prepared for trial after the 90 day continuance; and (3) the continuance would have burdened Washington Mutual. Moreover, while it is true that Gary did not attend the trial, the district court admitted his deposition testimony as evidence and considered it his in reaching its judgment. Because the Carlsons have not shown an abuse of discretion, we affirm the district court's denial of the Carlsons' motion for continuance.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**

11