FILED
United States Court of Appeals
Tenth Circuit

November 28, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WILLIAM SATTERFIELD,

      Plaintiff–Appellant,

v.

PATRICK J. MALLOY, III,

      Defendant–Appellee,

and

JOHN DOE; RICHARD ROE,
      Defendants.

No. 11-5144

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:10-CV-00003-TCK-FHM)**

Submitted on the briefs:*

Carl Hughes, Hughes & Hughes, Edmond, Oklahoma, for the Plaintiff-Appellant.

Joseph R. Farris (Paula J. Quillin with him on the briefs), Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma, for the Defendant-Appellee.

    *At the parties' request, the case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

Before **LUCERO**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

**LUCERO**, Circuit Judge.

William Satterfield brought suit against Patrick J. Malloy III, the court-appointed trustee of Satterfield's Chapter 7 bankruptcy estate. The district court concluded that the suit was barred by Barton v. Barbour, 104 U.S. 126 (1881), because Satterfield's claims are based on actions Malloy took as trustee and Satterfield did not first obtain permission from the bankruptcy court. Satterfield contends that Barton does not apply because Malloy's actions were ultra vires. We reject this contention; because Malloy's allegedly wrongful actions were conducted as part of Malloy's duties as trustee, Barton bars suit absent permission from the appointing court. We further conclude that Satterfield's action is not authorized by 28 U.S.C. § 959 because Malloy was not carrying on the business of the estate, but simply administering its liquidation. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

We draw the following facts from Satterfield's complaint. In June 2004, Satterfield pled guilty to certain federal criminal charges and was ordered to pay up to $1.7 million in restitution. Satterfield consulted various attorneys, including Malloy, to determine whether a declaration of bankruptcy would be appropriate. Malloy declined to

represent Satterfield in bankruptcy proceedings, but obtained substantial information regarding Satterfield's finances as part of the consultation process.

In August 2004, Satterfield voluntarily filed for Chapter 11 bankruptcy. The Office of the United States Trustee appointed Malloy as trustee of Satterfield's estate. Although Satterfield did not object to the appointment, he contends that he was not fully advised of potential areas of conflict that might arise as a result of Malloy acting as trustee.

Over Satterfield's objections, the bankruptcy court converted his Chapter 11 proceeding to Chapter 7 in February 2006. Malloy continued to serve as trustee of the estate following conversion. In March 2006, Malloy, acting in his capacity as trustee, filed an application to be appointed attorney of the estate. Satterfield moved to disqualify Malloy as trustee and attorney for his estate, arguing that Malloy had violated provisions of the Bankruptcy Code and raising by implication questions of Malloy's compliance with professional ethical duties.

Satterfield alleges that as a result of this motion, "Malloy engaged in a continuous course of conduct between 2006 and 2008 designed to retaliate against [Satterfield] for having raised an objection to [Malloy's] status as trustee and attorney for the [estate]." Specifically, Satterfield contends that Malloy: (1) deliberately acted to dissipate the value of the estate; (2) refused to report rents received as income, causing Satterfield to be assessed penalties and interest by the Internal Revenue Service; (3) allowed foreclosure on certain properties rather than making a good faith effort to sell them; (4)

failed to provide for the adequate upkeep of estate property; (5) failed to preserve the value of property subject to foreclosure; (6) failed to preserve and/or prosecute a claim of reverse condemnation against the City of Tulsa; and (7) failed to exercise reasonable care in renting certain property to an individual who engaged in illegal activity on the property.

In January 2010, Satterfield filed suit against Malloy in his individual capacity in federal district court. The district court dismissed the action pursuant to Malloy's Fed. R. Civ. P. 12(b)(6) motion, concluding that the Barton doctrine barred Satterfield's claims. Satterfield timely appealed.

## II

As an initial matter, we note that the Barton doctrine is jurisdictional in nature. See Barton, 104 U.S. at 131 (without leave of the appointing court, another court has "no jurisdiction to entertain a suit" against a receiver). Accordingly, dismissal under Barton should be made pursuant to Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6). Nevertheless, the standard of review is de novo under either subsection. See Colo. Envtl. Coal. v. Wenker, 353 F.3d 1221, 1227 (10th Cir. 2004). We will treat the dismissal as one having occurred under Rule 12(b)(1). See id. (considering appeal under Rule 12(b)(1) standards because grounds relied upon by district court were jurisdictional).

## A

In Barton, the Supreme Court held that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." 104 U.S. at 128. A

plaintiff who brings such a suit, the Court explained, attempts to "obtain some advantage over the other claimants upon the assets in the receiver's hands." Id. If allowed to proceed, "the court which appointed the receiver and was administering the trust assets would be impotent to restrain" such a plaintiff, complicating the proper administration of the estate. Id.

Our sibling circuits have frequently applied this doctrine in suits against a bankruptcy trustee, holding that Barton applies to claims arising from "acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." Heavrin v. Schilling (In re Triple S Rests., Inc.), 519 F.3d 575, 578 (6th Cir. 2008) (quotation omitted); see also Beck v. Fort James Corp. (In re Crown Vantage), 421 F.3d 963, 970 (9th Cir. 2005) ("[A] party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity."); Muratore v. Darr, 375 F.3d 140, 145 (1st Cir. 2004) (applying the doctrine to claims that allege "misconduct in discharging [the] trustee's administrative responsibilities"); Carter v. Rodgers, 220 F.3d 1249, 1252 (11th Cir. 2000) (noting the doctrine is triggered by claims for "breaches of fiduciary duties stemming from [trustees'] official bankruptcy duties").

As the Seventh Circuit has held, the Barton doctrine extends to bankruptcy trustees because "[t]he trustee in bankruptcy is a statutory successor to the equity receiver" and

like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. If he is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.

In re Linton, 136 F.3d 544, 545 (7th Cir. 1998). Although our court has not yet applied Barton in a case against a bankruptcy trustee, we conclude that the reasoning of our sibling circuits is persuasive. We now hold that Barton precludes suit against a bankruptcy trustee for claims based on alleged misconduct in the discharge of a trustee's official duties absent approval from the appointing bankruptcy court.

Although the Barton doctrine applies to many claims against a bankruptcy trustee, there are exceptions. The doctrine does not apply "if, by mistake or wrongfully, the receiver takes possession of property belonging to another." Barton, 104 U.S. at 134. An individual whose property is wrongfully seized may bring suit against a receiver "personally as a matter of right; for in such case the receiver would be acting ultra vires." Id. The question before us is whether Malloy's allegedly retaliatory actions fall within his scope of authority as trustee or fit within the ultra vires exception.

Although this Circuit has not specified the scope of the ultra vires exception to the Barton doctrine, other courts have most commonly relied upon the exception when a trustee wrongfully seizes possession of a third party's assets. See, e.g., Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir. 1967) ("[A] trustee wrongfully possessing property which is not an asset of the estate may be sued for damages arising out of his illegal occupation in a state court without leave of his appointing court."); In re Weisser

Eyecare, Inc., 245 B.R. 844, 851 (Bankr. N.D. Ill. 2000) ("Courts which have held trustees personally liable for actions taken outside the scope of their authority, have mainly done so in matters involving a trustee's mistaken seizure of property not property of the estate, or other similar actions.").

Our recent order and judgment in Teton Millwork Sales v. Schlossberg, 311 F. App'x 145 (10th Cir. 2009) (unpublished), charted a similar course. In that case, Teton Millwork Sales, a corporation in which the husband in an underlying divorce proceeding was a twenty-five percent shareholder, claimed that a court-appointed receiver wrongfully seized its assets. We concluded that such claims fell "squarely within th[e] ultra vires exception to the Barton doctrine." Id. at 148. However, the dissent argued that the seizure occurred within the scope of authority granted to the receiver because the appointing court "adjudged and ordered" the receiver to "seize any assets that [the husband] has an ownership interest therein." Id. at 153 (Ebel, J., dissenting). The majority distinguished the cases cited by the dissent on the ground that "none of them involved an outside party who claimed that their assets had wrongfully been seized." Id. at 148.

Other courts have adopted a relatively broad interpretation of the Barton doctrine when considering claims by plaintiffs who are involved in the underlying bankruptcy proceeding. In Triple S Restaurants, the plaintiff was general counsel for the bankrupt entity and claimed that the trustee threatened to refer criminal charges unless he signed a settlement agreement transferring certain funds to the estate. 519 F.3d at 578. The Sixth

-7-

Circuit concluded that the ultra vires exception did not apply because "the negotiations were within the context of recovering assets for the estate." Id. Similarly, in Lawrence v. Goldberg, 573 F.3d 1265 (11th Cir. 2009), the court held that a suit by the debtor was barred because the "essence of [plaintiff's] complaint is that the Trustee and other defendants colluded to enforce . . . an order of the bankruptcy court, and otherwise unlawfully attempted to bring assets into the bankruptcy estate" and thus the claims were "related to" the bankruptcy proceeding. Id. at 1271; see also Carter, 220 F.3d at 1253 (suit by debtor against trustees for breach of fiduciary duties barred because claims were based on actions "stemming from [trustees'] official bankruptcy duties"). The Sixth Circuit has adopted a presumption that "acts were a part of the trustee's duties unless Plaintiff initially alleges at the outset facts demonstrating otherwise." Lowenbraun v. Canary (In re Lowenbraun), 453 F.3d 314, 322 (6th Cir. 2006). That court has further held a bare allegation that a trustee's "actions were prompted by improper motives is insufficient to" overcome that presumption. Id.

We agree with the foregoing authorities. In suits brought by a debtor against the trustee, claims based on acts that are related to the official duties of the trustee are barred by the Barton doctrine even if the debtor alleges such acts were taken with improper motives. Under that standard, Satterfield's claims must fail.

Satterfield does not allege that Malloy wrongfully seized assets of another. Rather, he claims that Malloy acted to undermine the value of the estate and otherwise mismanaged the estate by: deliberately dissipating the estate's value; incurring IRS

penalties; allowing estate properties to be foreclosed upon; failing to provide for upkeep of the estate; refusing to continue a claim of reverse condemnation; and failing to exercise reasonable care in selecting renters. All of this alleged retaliatory misconduct stemmed from Malloy's duties as trustee and was clearly related to his administration of the bankruptcy estate. Regardless of whether Malloy acted with improper motives, we agree with the district court that these actions do not fall under the ultra vires exception to the Barton doctrine.

Satterfield argues that even under a narrow reading of the ultra vires exception, two factors require reversal. First, he contends that the "critical inquiry is whether the claim is against the bankruptcy estate or the trustee in his official capacity." And because Satterfield sued Malloy in his individual capacity for "his individual tort actions," Satterfield contends that the Barton doctrine does not apply. We disagree. Like other appeals courts, we refuse to recognize a "generalized tort exception to the Barton doctrine." Muratore, 375 F.3d at 147. Satterfield's assertion would allow essentially any tort claim to proceed by labeling it as against the trustee in his individual capacity. Regardless of the manner in which a plaintiff denominates his claim, courts applying the Barton doctrine must look to the substantive allegation to determine whether a claim is related to the trustee's bankruptcy duties.

Second, Satterfield argues that the Barton doctrine is inapplicable because his bankruptcy proceedings have concluded. Consistent with the holdings of other circuits, we reject this proposition. See Muratore, 375 F.3d at 147 (Barton doctrine continues to

apply after a bankruptcy estate has been closed); Crown Vantage, Inc., 421 F.3d at 972

(same).  As the Seventh Circuit noted, the Barton doctrine continues to serve important

purposes even after a bankruptcy is complete:

> Without the requirement [of obtaining leave from the appointing court],
> trusteeship will become a more irksome duty, and so it will be harder for
> courts to find competent people to appoint as trustees.  Trustees will have to
> pay higher malpractice premiums, and this will make the administration of
> the bankruptcy laws more expensive (and the expense of bankruptcy is
> already a source of considerable concern).  Furthermore, requiring that
> leave to sue be sought enables bankruptcy judges to monitor the work of
> the trustees more effectively.  It does this by compelling suits growing out
> of that work to be as it were prefiled before the bankruptcy judge that made
> the appointment; this helps the judge decide whether to approve this trustee
> in a subsequent case.

In re Linton, 136 F.3d 544, at 545.

The Barton doctrine exists to ensure other courts do not intervene in the

bankruptcy court's administration of an estate without permission.  A holding that Malloy

acted ultra vires simply because he allegedly discharged his duties as trustee with

improper motives would severely undermine this important judicial goal.  We conclude

that Malloy's actions fell within the scope of his court-appointed authority as trustee

because each of the alleged actions was related to his trusteeship duties.  Accordingly,

Satterfield was required to obtain leave of the bankruptcy court before filing suit in the

district court.

**B**

In the alternative, Satterfield claims that he is permitted to bring suit against

Malloy under 28 U.S.C. § 959, which provides:  "Trustees, receivers or managers of any

property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a). This narrow statutory exception to the <u>Barton</u> doctrine applies only to actions taken while "carrying on business." <u>Id.</u> The Eleventh Circuit has explained that § 959(a) was intended to "permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store." <u>Carter</u>, 220 F.3d at 1254 (quotation omitted).

In the sole relevant—but unpublished—opinion of this court, we noted that a trustee's letter to investors informing them of plaintiff's fraud did not fall within the exception provided by § 959(a) because it was not performed while carrying on business. <u>See</u> <u>Springer v. The Infinity Group Co.</u>, 1999 U.S. App. LEXIS 20253, at *3-5 (10th Cir. Aug. 26, 1999) (unpublished). Other courts considering this provision have interpreted it in a manner that avoids having the exception swallow the rule. "Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." <u>Carter</u>, 220 F.3d at 1254 (quotation omitted); <u>Allard v. Weitzman (In re DeLorean Motor Co.)</u>, 991 F.2d 1236, 1241 (6th Cir. 1993) (same); <u>see also</u> <u>Crown Vantage, Inc.</u>, 421 F.3d at 971-72 (section 959(a) "applies only if the trustee or other officer is actually operating the business, and only to acts or transactions in conducting

-11-

the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise" (quotation omitted)).

These courts have distinguished between a trustee who continues operating a debtor's business and those who are simply winding up the estate's affairs. See Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab., 585 F.3d 1211, 1218 (9th Cir. 2009) (noting differences between a "[r]eceiver's conduct in operating [a] business in an ongoing or usual manner," and "actions taken in winding up an enterprise or supervising a bankruptcy reorganization" (quotation omitted)); Muratore, 375 F.3d at 144 ("Actions taken in the mere continuous administration of property under order of the court do not constitute an 'act' or 'transaction' in carrying on business connected with the estate."); Carter, 220 F.3d at 1254 ("Section 959(a) does not apply to suits against trustees for administering or liquidating the bankruptcy estate."). We agree that § 959(a) is limited to circumstances in which a trustee is operating a business in an ongoing manner rather than simply taking administrative steps to liquidate the estate.

Satterfield's claims relate to actions Malloy took during a two-year period after Satterfield's bankruptcy was converted to a Chapter 7 proceeding. The acts alleged— accounting for, renting, and selling property—were among Malloy's statutory responsibilities and powers as a Chapter 7 trustee liquidating Satterfield's estate. Satterfield's allegations are very similar to those in Muratore, a case in which § 959(a) was held inapplicable. See 375 F.3d at 142, 146 (trustee's alleged failure to properly manage rental properties did not constitute "carrying on business" under § 959(a)). And

-12-

like that court, we conclude that Satterfield's complaint is based "on the trustee's alleged misconduct in liquidating and administering the estate's property, and not on tortious acts committed in the furtherance of [plaintiff's] leasing or mortgage and real estate business" and thus "section 959(a) does not apply." Id.

## III

For the foregoing reasons, we **AFFIRM**.