[Cite as *Ettayem v. Ramsey*, 2019-Ohio-675.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ashraf A. Ettayem, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-155 |
| v. | : | (C.P.C. No. 16CV-2803) |
| David W. Ramsey et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on February 26, 2019

**On brief:** *Ashraf A. Ettayem,* pro se. **Argued:** *Ashraf A. Ettayem.*

**On brief:** *Newhouse, Prophater, Kolman & Hogan, LLC, Michel Jendretzky,* and *D. Wesley Newhouse,* for appellees David W. Ramsey and Guaranteed Receivership Services, LLC. **Argued:** *Michel Jendretzky.*

**On brief:** *Thomas R. Merry Co., L.P.A.* and *Thomas R. Merry,* for appellee The Huntington National Bank. **Argued:** *Thomas R. Merry.*

**On brief:** *Cooper & Elliott, LLC* and *Barton R. Keyes,* for appellees Shively, Davis, Guaranteed Asset Management, Guaranteed Brokerage Services, and Guaranteed Realty Services. **Argued:** *Barton R. Keyes.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, Ashraf A. Ettayem, appeals from a judgment of the Franklin County Court of Common Pleas that granted the motions to dismiss of all defendants-appellees. For the following reasons, we affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   In December 2007 and January 2008, Limited Investment Group ("Limited Investment") sought financing from appellee, Huntington National Bank ("Huntington"), to remodel a shopping plaza owned by Limited Investment located at 3150-3218 Allegheny Avenue ("Allegheny property") in Columbus, Ohio. (Am. Comp. at ¶ 16.) Appellant is the sole shareholder of Limited Investment. (Am. Compl. at ¶ 1.)  A second property owned by Limited Investment, located at 329 S. Central Avenue ("Central Avenue property") was offered as collateral. (Am. Compl. at ¶ 19.) The Central Avenue property was owned by Limited Investment and housed a Shop N Save grocery/discount store. (Am. Compl. at ¶ 56.)

{¶ 3}   Appellant signed the loan documents on October 1, 2008, and $535,000 of the $900,000 loan was disbursed. (Am. Compl. at ¶ 22, 26.) In July 2009, Huntington informed appellant that due to economic conditions and the lack of Huntington's interest to finance shopping malls, Huntington would not make any further disbursements. (Am. Compl. at ¶ 42-43.)

{¶ 4}   In May 2009, a fire caused damage to part of the shopping mall under construction and appellant received a check from the insurance company written to Limited Investment and Huntington for $139,000. Appellant gave the check to Huntington without endorsing it and believes Huntington applied the proceeds to the outstanding balance on the loan. (Am. Compl. at ¶ 45-48.) Appellant contends that Huntington told him that if he made interest-only payments, it would not foreclose on Limited Investment's assets. (Am. Compl. at ¶ 50.)

{¶ 5}   Huntington sued Limited Investment for its default on the loan and foreclosed on the Central Avenue property. (Am. Compl. at ¶ 56.) Limited Investment filed an action in the Franklin County Court of Common Pleas against Huntington alleging breach of contract, fraud, and replevin and sought injunctive relief (Franklin C.P. No. 10CV-3000). (Am. Compl. at ¶ 52.) Huntington and the Franklin County Treasurer sued Limited Investment in Franklin C.P. Nos. 12CV1602 and 12CV1454, which were both consolidated with Franklin C.P. No. 10CV3000 ("Consolidated Cases"). (Am. Compl. at ¶ 57.) Defendant-appellee, David Ramsey, was appointed as receiver. (Am. Compl. at ¶ 57.) Appellant alleged that Ramsey used Patrick Shivley, Guaranteed Receivership Services

LLC, Guaranteed Brokerage Services, Guaranteed Asset Management Services, and Guaranteed Realty Services to execute his duties as the appointed receiver. Appellant further alleged that these defendants are all subject to Loc.R. 66, owe appellant a fiduciary duty as a receiver, and they exceeded their authority as a receiver. (Am. Compl. at ¶ 59, 63-64, 100, 120.) The Consolidated Cases remain pending because they are stayed pursuant to bankruptcy filing.

{¶ 6} On March 22, 2016, appellant filed a complaint and then filed an amended complaint on April 19, 2016. The amended complaint named Ramsey, Shivley, Bill Davis, Guaranteed Receivership Services, LLC, Guaranteed Brokerage Services, Guaranteed Asset Management, Guaranteed Realty Services ("Guaranteed Defendants"), and Huntington as defendants. The amended complaint alleged breach of fiduciary duty, conversion, and unjust enrichment against the Guaranteed Defendants, tortious interference with contract and tortious interference with business opportunities against all the defendants, conversion and unjust enrichment against Huntington, theft, fraud, and civil conspiracy, intentional and negligent infliction of emotional distress against all the defendants. The claims related to alleged damages resulting from the disposition of the Allegheny and Central Avenue properties and the assets located at the Central Avenue property in the Shop N Save store.

{¶ 7} In May 2016, the defendants each filed a motion to dismiss and the trial court granted each motion and dismissed appellant's amended complaint on February 2, 2017.

## II. ASSIGNMENT OF ERROR

{¶ 8} Appellant filed a timely notice of appeal and raised the following assignment of error for our review:

> The trial court erred in granting defendants' motion to dismiss plaintiff's first amended complaint.

## III. ANALYSIS

{¶ 9} In his assignment of error, appellant contends that the trial court erred in granting appellees' motions to dismiss and dismissing his amended complaint. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim is procedural and "tests the sufficiency of the complaint." *Volbers-Klarich v. Middletown Mgt.*, 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11, citing *Assn. for Defense of Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117 (1989). In order for a trial court to grant a motion to dismiss for failure to

state a claim upon which relief may be granted, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242 (1975), syllabus. In construing the complaint upon a Civ.R. 12(B)(6) motion, a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party. *State ex rel. Turner v. Houk*, 112 Ohio St.3d 561, 2007-Ohio-814, ¶ 5. When considering a motion to dismiss, pursuant to Civ.R. 12(B)(6), the court looks only to the complaint to determine whether the allegations are legally sufficient to state a claim. *Springfield Fireworks, Inc. v. Ohio Dept. of Commerce*, 10th Dist. No. 03AP-330, 2003-Ohio-6940, ¶ 12. An appellate court uses a de novo standard of review to determine whether the dismissal of a complaint pursuant to Civ.R. 12(B)(6) was proper. *Woods v. Riverside Methodist Hosp.*, 10th Dist. No. 11AP-689, 2012-Ohio-3139, ¶ 9.

{¶ 10} Appellant filed the amended complaint on his behalf and allegedly on behalf of Shop N Save. Appellant is a pro se litigant and not an attorney authorized to practice law and therefore, cannot assert claims on behalf of Shop N Save. *Bank of N.Y. v. Miller*, 185 Ohio App.3d 163, 2009-Ohio-6117 (5th Dist.).

{¶ 11} In his first four causes of action, appellant alleged breach of fiduciary duty, conversion, unjust enrichment, and tortious interference with contract against the Guaranteed Defendants. Appellant alleges that all the Guaranteed Defendants acted as receivers and breached a duty to him and exceeded the authority granted to them pursuant to Loc.R. 66. Appellant alleges the Guaranteed Defendants converted his personal and business property for their own benefit. Appellant's unjust enrichment claim is based on his allegation that the Guaranteed Defendants unlawfully obtained a financial benefit as a consequence of an unauthorized payment of sale proceeds and by misappropriating his personal and business properties. Finally, appellant alleges that the Guaranteed Defendants interfered with his purchase and management contracts with Jamal Qutifan, who operated the Shop N Save and had a lease agreement with Limited Investment.

{¶ 12} The trial court held that appellant's claims against the Guaranteed Defendants failed to state a claim upon which relief may be granted because appellant did not obtain leave from the appointing court to sue the receiver. The trial court acknowledged that, generally, courts have held that a party may not file an action against a receiver unless

prior leave is obtained from the appointing court. This policy is known as the "Barton" doctrine, adopted in *Barton v. Barbour*, 104 U.S. 126, 128 (1881).

{¶ 13} In 1887, Congress enacted 28 U.S.C. 959, in response to *Barton*. Appellant argues that this law and exception to the leave requirement applies to these facts. 28 U.S.C. 959 provides that "[t]rustees, receivers or managers of any property * * * may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." The courts have distinguished "carrying on business" from collecting and liquidating assets. The purpose of Section 959 is to redress torts committed in furtherance of the bankrupt's business. *Bell v. McLemore & Young PLLC*, M.D.Tenn. 3:17-CV-959 (Nov. 2, 2017). Section 959 is a limited exception to the Barton doctrine that permits suits against a trustee or receiver for actions taken while "carrying on business." However, Section 959 "does not apply to suits against the trustee for actions taken while administering the estate." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (May 3, 1993). 28 U.S.C. 959 is inapplicable to these facts, it does not provide an exception to the leave requirement for appellant.

{¶ 14} Appellant also argues that the *Barton* case itself provides an exception to the leave requirement for a situation involving the receiver acting outside the scope of his authority. Appellant contends that "if by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefor against him personally as a matter of right; for in such case the receiver would be acting ultra vires." (Appellant's Brief at 17-18.) Appellant contends that he can file a claim against the receiver personally. In *Satterfield v. Malloy*, 700 F.3d 1231 (10th Cir.2012), the Tenth Circuit discussed the ultra vires exception to the Barton doctrine. In *Satterfield*, the plaintiff attempted to sue the court-appointed trustee without first obtaining permission from the bankruptcy court. The Tenth Circuit applied the Barton doctrine despite the allegation that the trustee's actions were ultra vires. The court stated that the ultra vires exception is most commonly relied upon when a trustee wrongfully seizes possession of a third party's assets. However, the court held "[i]n suits brought by a debtor against the trustee, claims based on acts that are related to the official duties of the trustee are barred by the *Barton* doctrine even if the debtor alleges such acts were taken with improper motives." *Satterfield* at 1236. *Satterfield* did not involve an allegation that the trustee had wrongfully seized assets of

another, and similarly, in this case, appellant alleges the receiver improperly seized his property, not that of a third party.

{¶ 15} Appellant cites cases where the receiver can be or was sued in his personal capacity. However, the courts still require leave from the appointing court to do so. Appellant relies on *Murphy v. Holbrook*, 20 Ohio St. 137, 142-43 (1870). In *Murphy*, the court appointed receivers to operate a railroad and an employee of the railroad was killed at work during the receivers' administration. The plaintiff was granted leave of court to file an action against the receivers. The Supreme Court found that when granted leave of court, a receiver is not protected "from liability for injuries arising out of the prosecution of their business." *Murphy* at 145. However, the Supreme Court required leave of the appointing court.

{¶ 16} Here, appellant filed suit against the Guaranteed Defendants based on their actions as receivers in the Consolidated Cases without first obtaining leave from that court to file this action. There is no allegation in the complaint that appellant obtained the necessary leave of court. Therefore, since appellant did not obtain leave from the appointing court to sue the receivers, he could not obtain relief on his breach of fiduciary duty, conversion, unjust enrichment, and tortious interference with contract against the Guaranteed Defendants.

{¶ 17} Appellant's causes of action four through nine assert tortious interference and tortious interference with business opportunities, theft and fraud against all the defendants, conversion and unjust enrichment against Huntington. These causes of action arise from the disposition of the Central Avenue property and the property of the Shop N Save. Appellant does not own the Central Avenue property. Appellant stated in his complaint that Limited Investment owned the two real properties. (Am. Compl. at ¶ 16, 19.) Appellant's complaint states that Jamal Quitifan, operated the Shop N Save pursuant to a Management Agreement and a Lease Agreement with Limited Investment. (Am. Compl. at ¶ 56.) Appellant alleges that he was attempting to sell his interest in the Shop N Save Corporation to Quitifan. (Am. Compl. at ¶ 56.)

{¶ 18} Appellant alleges that defendants "took control of the personal property located at the Shop N Save operated within the South Central Avenue property, which belonged to Plaintiff. The personal property included without limitation the cash

(Approximately $400) and checkbooks located at the Shop N Save on South Central Avenue. It also included without limitation the store's fixtures and its entire inventory, which the defendants sold on August 2012. The defendants also took all of plaintiff's personal and business records and documents." (Am. Compl. at ¶ 79.)

{¶ 19} In order to commence a lawsuit, a party must have both standing and capacity to sue. *Mousa v. Mt. Carmel Health Sys.*, 10th Dist. No. 12AP-737, 2013-Ohio-2661, ¶ 12. A person lacks standing unless he has a real interest in the subject matter of the action. *Id.* Capacity to sue involves "a determination as to whether an individual may properly sue, either as an entity or on behalf of another." *Id.* at ¶ 13. Standing is a jurisdictional requirement and capacity to sue is not but, rather, relates to the party's right to appear in a court. *Id.* "If a party to an action is not the real party in interest, such party lacks standing to prosecute the action." *Deutsche Bank Natl. Trust Co. v. Cassens*, 10th Dist. No. 09AP-865, 2010-Ohio-2851, ¶ 8, citing *Bank of New York v. Stuart*, 9th Dist. No. 06CA008953, 2007-Ohio-1483, ¶ 9.

{¶ 20} However, any right to assert such causes of action belongs to the corporation which owned the Central Avenue property and the Shop N Save property or was the party to the existing or prospective contract. Appellant, as the sole shareholder of Limited Investment, did not have standing to assert these claims and Limited Investment and/or Shop N Save are not parties to this action. "[O]nly a corporation and not its shareholders can complain of an injury sustained by, or wrong done to, the corporation." *Granata v. Stamatakos*, 10th Dist. No. 13AP-424, 2013-Ohio-5548, ¶ 15. Further, a shareholder does not have an independent cause of action from the corporation " 'where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation.' " *Id.*, quoting *Adair v. Wozniak*, 23 Ohio St.3d 174, 178 (1986). Generally, even if there is a single shareholder, that is insufficient to pierce the corporate veil and treat the shareholder and the corporation as a single entity. *Granata* at ¶ 15, citing *Starner v. Guardian Industries*, 143 Ohio App.3d 461 (10th Dist.2001).

{¶ 21} Although appellant argues to this court that the Shop N Save property belonged to him personally, the complaint states that the Shop N Save is a separate entity and it owns the fixtures and inventory. Appellant has not alleged any individual harm, other

than the harm alleged to the corporation. Since appellant does not have standing to bring these claims, the trial court did not err in finding he did not state a claim upon which relief may be granted.

{¶ 22} Finally, we note that appellant failed to provide the contracts that he alleges were interfered with by defendants. The elements of tortious interference with a contract are: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (1999). Without a contract in evidence, the first element of the tort has not been demonstrated. Appellant also did not allege with particularity any business opportunity with which defendants interfered for his tortious interference with business opportunities.

{¶ 23} In his tenth cause of action, appellant asserts a claim for intentional infliction of emotional distress against all defendants. Appellant alleges that defendants' extreme and outrageous conduct intentionally or recklessly caused him severe emotional distress. (Am. Compl. at ¶ 165.) "To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant, through extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress." *Mowery v. Columbus*, 10th Dist. No. 05AP-266, 2006-Ohio-1153, ¶ 48.

{¶ 24} The court initially determines as a matter of law whether conduct is "extreme and outrageous." *Morrow v. Reminger & Reminger Co. L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665 (10th Dist.), ¶ 48, citing *Bell v. Ohio State Bd. of Trustees*, 10th Dist. No. 06AP-1174, 2007-Ohio-2790, ¶ 24, citing *Crawford v. ITT Consumer Fin. Corp.*, 653 F.Supp. 1184, 1192 (S.D.Ohio 1986). The court may dismiss a claim for intentional infliction of emotional distress when the alleged conduct does not reach the level of extreme and outrageous. *Morrow* at ¶ 48. The Supreme Court in *Yeager v. Local Union* 20, 6 Ohio St.3d 369, 374-75, *overruled on other grounds*, quoted the standard for "extreme and outrageous" conduct citing the Restatement of the Law 2d, Torts, Section 46, comment d (1965), as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree if aggravation

which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

{¶ 25} In this case, the trial court found that the alleged conduct does not reach the level of extreme and outrageous conduct. Here, the claims all relate to the disposition of the real property owned by Limited Investment and the business property of the Shop N Save and are the result of the foreclosure. The conduct does not demonstrate that the defendants acted in a manner as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." The trial court did not err in dismissing appellant's claim for intentional infliction of emotional distress against all defendants.

{¶ 26} In his eleventh cause of action, appellant asserts a claim for negligent infliction of emotional distress against all defendants. Appellant contends that defendants negligently caused emotional distress or knew or should have known that their action or inaction would result in serious emotional distress to him. (Am. Compl. at ¶ 168.)

{¶ 27} In *Paugh v. Hanks*, 6 Ohio St.3d 72 (1983), the Supreme Court of Ohio explained the requirement of "serious" emotional distress, as follows:

[S]erious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.

{¶ 28} In *High v. Howard*, 64 Ohio St.3d 82 (1992), *overruled on other grounds*, the Supreme Court of Ohio set forth that "[i]n the absence of statutory provision therefor, Ohio courts have limited recovery for negligent infliction of emotional distress to such

instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." *Id.* at 85-86, citing *Paugh*. In this case, the alleged emotional distress was not the result of appellant being a bystander to an accident or was in fear of physical consequences to himself, it was the result of the disposition of the real property owned by Limited Investment and the business property of the Shop N Save and are the result of the foreclosure. The trial court did not err in finding that appellant's complaint did not state a claim for relief regarding his negligent infliction of emotional distress claim.

{¶ 29} In his twelfth cause of action, appellant seeks to hold Ramsey, Shively and Davis personally liable for the acts of their limited liability companies. Generally, a member of a limited liability company has no personal liability "by reason of being a member or manager of the limited liability company." R.C. 1705.48. A limited exception to this general rule has been established by piercing the corporate veil. "Shareholders may thus be held liable for their own bad acts notwithstanding the protections afforded by the corporate form when they use the corporation 'for criminal or fraudulent purposes' to the detriment of a third party." *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 510, 2008-Ohio-4827, ¶ 17, citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 289 (1993). Piercing the corporate veil is a "rare exception" and only used "in the case of fraud and certain other exceptional circumstances." *Dombroski*, quoting *Dole Food Co. v. Patrickson,* 538 U.S. 468, 475 (2003), *superseded in part by statute on other grounds.*

{¶ 30} In *Belvedere*, the Supreme Court of Ohio developed a three-pronged test for courts to use when deciding whether to pierce the corporate veil, as follows:

> The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

{¶ 31} In *Dombroski*, the Supreme Court of Ohio modified the second prong of the *Belvedere* test and determined that: "To fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Id.* at syllabus.

{¶ 32} Appellant failed to allege a sufficient factual content that permits a reasonable inference that the corporate veil should be pierced and he did not address any of the elements of the veil-piercing doctrine. Appellant alleges that: "They have engaged in fraudulent conduct, and have attempted to conceal it from scrutiny." (Am. Compl. at ¶ 97.) He then lists other cases of fraud of Ramsey and Shivley. He alleges that the Guaranteed Defendants share office space. (Am. Compl. at ¶ 61.) Finally, appellant alleges that Ramsey and Shivley sign legal documents for Davis. (Am. Compl. at ¶ 66.) However, these allegations are not allegations regarding the elements of the test to pierce the corporate veil. The trial court did not err in finding that appellant failed to state a claim against Ramsey, Shivley, and Davis personally for the actions taken by the limited liability corporations. As such, appellant's assignment of error is overruled.

## IV. CONCLUSION

{¶ 33} Finding no error in the trial court's dismissal of appellant's complaint for failure to state a claim upon which relief could be granted, we overrule appellant's assignment of error and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT, P.J. and BRUNNER, J., concur.

_____