[Cite as *DH Hensley Ents., L.L.C. v. Nelson*, 2026-Ohio-2307.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| DH HENSLEY ENTERPRISES, LLC | : | |
| | : | C.A. Nos. 30357; 30456 |
| Appellant | : | |
| | : | Trial Court Case No. 2023 CV 01217 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| JACOB C. NELSON, ET AL. | : | Court) |
| | : | |
| Appellees | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 18, 2026, the judgments of the trial court are affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,


_____
RONALD C. LEWIS, PRESIDING JUDGE

EPLEY, J., and HANSEMAN, J., concur.

KONRAD KUCZAK, Attorney for Appellant
RONALD J. KOZAR, Attorney for Appellees Craig and Sandra Kellog
GREGORY STOUT, Attorney for Appellee Civista Bank
RAY C. FREUDIGER, Attorney for Appellee National Title Company
THOMAS W. KENDO, Jr., Attorney for Appellees Jacob C. Nelson and Nelson Ventures, Inc.

LEWIS, P.J.

{¶ 1} Plaintiff-appellant DH Hensley Enterprises, LLC ("Hensley"), appeals from orders of the Montgomery County Common Pleas Court granting summary judgment to appellees on Hensley's complaint. For the following reasons, we affirm the judgments of the trial court.

## I.  Course of Proceedings

{¶ 2} This appeal involves a dispute over whether Jacob C. Nelson breached a purported contract to sell real property to Hensley and whether other parties tortiously interfered with that contract. On March 10, 2023, Hensley filed a lawsuit in the Montgomery County Common Pleas Court to force Nelson and his company, Nelson Ventures, Inc. ("Nelson Ventures"), to sell Hensley the property pursuant to an alleged contract.

{¶ 3} According to Hensley's amended complaint, Rick B. Feltner, a licensed real estate agent, advertised for sale the property located at 6363 Farmersville-West Carrollton Road in Moraine ("the Property"). Amended Complaint, ¶ 4, 8, 13. Feltner advertised the Property on the Loopnet Commercial Real Estate website on behalf of Nelson, the fee simple owner of the Property at that time. *Id.* at ¶ 13.

{¶ 4} In early October 2022, Nelson and Hensley executed a written "Real Estate Purchase Agreement" ("October Agreement") pursuant to which Nelson agreed to sell the

Property to Hensley. *Id.* at ¶ 14-15. The October Agreement stated that the purchase price was $600,000 and Hensley was required to deposit $2,000 in earnest money. Donnie Hensley, the owner of Hensley, electronically signed the October Agreement and initialed the five boxes in the October Agreement. These five boxes related to Nelson's address, the Property information, the name of the title agent, the address of the title agent, and the commissions of the brokers. Nelson also electronically initialed the five boxes and signed the October Agreement. *Id.* at Exhibit A.

{¶ 5} The sale contemplated by the October Agreement did not come to fruition. In its amended complaint, Hensley blamed this failure on Nelson's inaction and alleged that Feltner sent Hensley a December 12, 2022 "Termination and Release of Contract to Purchase the Property." *Id.* at ¶ 22-25. Nelson blamed the failure to close on the October Agreement on Hensley's failure to timely obtain the requisite cash for the transaction.

{¶ 6} According to the amended complaint, Feltner then negotiated a January 10, 2023 "Real Estate Purchase Agreement" ("January Agreement") under which Hensley was required to deposit an additional $20,000 in earnest money and pay $600,000 for the Property. Amended Complaint, ¶ 26-27, Exhibit D. The terms of the January Agreement were virtually identical to those in the October Agreement with a couple of notable exceptions, such as the amount of earnest money Hensley was required to deposit. The January Agreement also had six boxes to initial rather than five. The additional box related to the amount of earnest money. Donnie Hensley electronically initialed all six boxes anew in the January Agreement. Nelson electronically initialed the box requiring Hensley to deposit $22,000 in earnest money but did not electronically sign the January Agreement or initial the other five boxes anew. *Id.* at Exhibit D.

3

{¶ 7} Hensley took actions to move forward under the January Agreement, but Nelson did not. On February 3, 2023, National Title Company, a title insurance agency, was notified that Civista Bank had approved a $600,000 mortgage loan to Nelson, who offered the Property as collateral for the loan. *Id.* at ¶ 10, 29. On February 6, 2023, National Title Company was notified that PNC Bank had made a mortgage loan commitment to Hensley in the amount of $300,000 on the Property and that Hensley was ready to close on the purchase of the Property pursuant to the January Agreement with Nelson. *Id.* at ¶ 30. On February 14, 2023, despite its knowledge of Hensley's intent to purchase the Property from Nelson, National Title Company prepared a quit claim deed conveying all of Nelson's interest in the Property to Nelson Ventures. *Id.* at ¶ 34.

{¶ 8} On February 17, 2023, National Title Company helped close a $600,000 mortgage loan on the Property with Nelson Ventures as mortgagor and Civista Bank as mortgagee. *Id.* at ¶ 36. National Title Company also scheduled a closing for February 24, 2023, relating to the January Agreement. *Id.* at ¶ 40. A day before that scheduled closing, Feltner advised Hensley's real estate agent that Nelson did not intend to close the sale of the Property pursuant to the January Agreement. *Id.* at ¶ 41. Feltner tendered a termination of the contract to purchase, but Hensley refused to sign it. *Id.* at ¶ 41-43. Ultimately, Hensley was present at the office of National Title Company on February 24, 2023, with sufficient funds and an intent to close on the January Agreement, but Nelson did not appear at the closing. *Id.* at ¶ 44-45.

{¶ 9} Hensley alleged that the sale of the Property to Hensley did not happen because of the wrongful actions of Nelson, Nelson Ventures, and several other defendants. In its amended complaint, Hensley raised breach of contract, fraudulent conveyance, and slander of title claims against Nelson and Nelson Ventures. Hensley alleged that the following

4

additional parties committed tortious interference with a contractual relationship: (1) Feltner; (2) Fields of Moraine, LLC; (3) Craig Kellog and Sandy Kellog, as owners of the Agora Realty Group for whom Feltner also was an agent; and (4) National Title Company. Hensley sought a decree of specific performance of the January Agreement requiring Nelson Ventures to convey the Property to Hensley free and clear of all liens. Hensley also sought compensatory and punitive damages against all the defendants except Civista Bank. The only relief Hensley sought against Civista Bank was for the trial court to extinguish Civista Bank's interest in the Property.

{¶ 10} On July 12, 2024, Civista Bank filed a motion for summary judgment. The court granted the motion on October 7, 2024, finding that Civista Bank was a bona fide purchaser for value and gave a mortgage in good faith, for value, and without actual or constructive notice of Hensley's dispute relating to the Property.

{¶ 11} On October 10, 2024, Hensley filed a motion for summary judgment against Nelson and Nelson Ventures. Hensley argued that there was no disputed issue of material fact that Nelson had "reneged on his clear and unequivocal obligation" contained in the January Agreement to convey the Property to Hensley. According to Hensley, while Nelson did not sign the signature line or initial five of the six boxes in the January Agreement anew, Nelson affixed his initials to the box indicating an increase in the amount of earnest money, which was the most essential change from the October Agreement. Therefore, Hensley argued that Nelson's initialing of the earnest money box in the January Agreement "must, at a minimum, be considered the execution of an addendum to" the October Agreement and a ratification of all the terms of the October Agreement.

{¶ 12} Nelson and Nelson Ventures filed an opposition memorandum to Hensley's motion for summary judgment arguing that the October Agreement was terminated and the

January Agreement was not an enforceable contract. Nelson and Nelson Ventures also filed their own motion for summary judgment against Hensley. The remaining defendants filed motions for summary judgment against Hensley arguing that either an enforceable contract between Hensley and Nelson did not exist or they did not tortiously interfere with such a contract.

{¶ 13} On January 9, 2025, the trial court issued a series of orders in which it overruled Hensley's motion for summary judgment and granted the motions for summary judgment of the remaining defendants. Hensley filed a timely notice of appeal from the trial court's orders.

## II. The Trial Court Was Not Required to Issue Findings in Support of Its Orders Granting Summary Judgment to Defendants

{¶ 14} Hensley raises five assignments of error, which we address in turn. Hensley's first assignment of error states:

The orders on appeal fail to contain essential findings.

{¶ 15} In its orders granting defendants' motions for summary judgment and denying Hensley's motion for summary judgment, the trial court set forth the applicable summary judgment standard and provided reasons for its rulings on the parties' motions for summary judgment. But Hensley contends that the trial court's orders should be reversed because they failed to contain the "essential finding" that there were no genuine issues of material fact and failed to "indicate that the trial court construed the evidence most favorably to Hensley." Appellant's Brief, p. 15. We do not agree.

{¶ 16} "[A] trial court is not required to issue findings of fact and conclusions of law when ruling on a motion for summary judgment made under Civ.R. 56." *Jackson v. State*, 2021-Ohio-1409, ¶ 27, citing *Maddox v. E. Cleveland*, 2012-Ohio-9, ¶ 23 (8th Dist.). "This

6

rule is rooted in common sense, because 'we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.'" *Dean v. Liberty Mut. Ins.*, 2018-Ohio-3042, ¶ 9 (8th Dist.), quoting *Jackson v. Glidden Co.*, 2007-Ohio-277, ¶ 8 (8th Dist.). "Civ.R. 58(A) and R. 54(A) construed together require no more than a clear and concise pronouncement of the court's judgment." *Rogoff v. King*, 91 Ohio App.3d 438, 449 (8th Dist. 1993), citing *Brackmann Communications, Inc. v. Ritter*, 38 Ohio App.3d 107 (12th Dist. 1987).

{¶ 17} The trial court set forth the correct legal standards to be applied to motions for summary judgment, which included statements that the evidence must be construed in the light most favorable to the non-moving party and that summary judgment would be granted only if there was no genuine issue of material fact. The trial court then made clear pronouncement of its judgments. The trial court was not required to state at the end of its decisions that there was no genuine issue of material fact or that it had construed the evidence in favor of the nonmovant.

{¶ 18} The first assignment of error is overruled.

**III. The Trial Court Did Not Err in Granting Summary Judgment to Nelson and Nelson Venture, Inc.**

{¶ 19} Hensley's second assignment of error states:

The Trial Court Committed Prejudicial Error by Granting Summary Judgment to Jacob C. Nelson and Nelson Ventures, LLC.

**a. Summary Judgment Standard**

{¶ 20} "When reviewing a decision granting summary judgment, we apply a de novo standard of review." *State ex rel. Armatas v. Plain Twp. Bd. of Zoning Appeals*, 2020-Ohio-2973, ¶ 8, citing *Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 2013-Ohio-4544,

7

¶ 9.   Summary judgment is appropriate when (1) no genuine issue as to any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) "'it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'"   *Id.*, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).   "The substantive law of the claim or claims being litigated determines whether a fact is 'material.'"   *Perrin v. Cincinnati Ins. Co.*, 2020-Ohio-1405, ¶ 29 (2d Dist.), citing *Herres v. Millwood Homeowners Assn., Inc.*, 2010-Ohio-3533, ¶ 21 (2d Dist.).

{¶ 21} The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated.   *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988).   To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment.   *Dresher v. Burt*, 1996-Ohio-107, ¶ 17-18.

{¶ 22} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings.   *Id.* at ¶ 17.   Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial.   *Id.*, citing Civ.R. 56(E).   "[I]f the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."   *Id.* at ¶ 18.

### b.  Legal Principles Relating to Contact Formation

{¶ 23} This appeal involves a purported agreement to sell real property.   Ohio's statute of frauds provides:   "No action shall be brought whereby to charge the defendant

8

. . . upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them . . . unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith . . . ." R.C. 1335.05. The purpose of the statute of frauds is "'to prevent misunderstandings regarding the sale of land, especially given the uniqueness of real property. To this end, the statute is satisfied only where there is a writing sufficient to evidence that an agreement has been reached concerning the sale of real property.'" *Ridge Stone Builders & Developers, Ltd. v. Gribbin*, 2003-Ohio-5188, ¶ 23 (6th Dist.), quoting *Auken v. Kellan Properties*, 1996 WL 549212, *5 (6th Dist. Sept. 30, 1996). "'If a contract falling under the statute of frauds is not properly memorialized in a signed writing, the effect of the statute is to render an otherwise valid contract unenforceable.'" *Stickney v. Tullis-Vermillion*, 2006-Ohio-842, ¶ 23 (2d Dist.), quoting *Beaverpark Assocs. v. Larry Stein Realty Co.*, 1995 WL 516469, *3 (2d Dist. Aug. 30, 1995).

{¶ 24} "'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Id.*, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). "[I]t is well-established that courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be bound by the terms of an agreement until formalized in a written document and signed by both . . . ." *Richard A. Berjian, D.O., Inc. v.*

9

*Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 151 (1978). "The burden of establishing a contract and the terms therein rests upon the party who asserts the agreement." *Guardian Alarm Co. v. Portentoso*, 2011-Ohio-5443, ¶ 17 (3d Dist.), citing *Lynd v. Sandy & Beaver Valley Farmers Mut. Ins. Co.*, 103 Ohio App. 408 (4th Dist. 1957).

{¶ 25} "Courts presume that the intent of the parties to a contract resides in the language they have chosen to employ in the agreement." *Fountain Skin Care v. Hernandez*, 2008-Ohio-489, ¶ 22 (2d Dist.), citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 1997-Ohio-202, ¶ 35. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984). Under such circumstances, a court may not go beyond the plain language of the agreement to determine the parties' rights and obligations, and it may not consider parole evidence of the parties' intentions. *Fountain Skin Care* at ¶ 22. Instead, the court must give effect to the express terms of the contract. *Id.*, citing *Shifrin v. Forest City Ent., Inc.*, 1992-Ohio-28, ¶ 10.

### c. The October Agreement and the January Agreement

{¶ 26} In the October Agreement, Hensley is identified as the buyer and Nelson is identified as the seller. There are five boxes in the October Agreement in which the parties were to apply their initials. The October Agreement states, in part: "Upon Seller's acceptance, this offer shall become a complete agreement, binding upon, and inuring to the benefit of Buyer and Seller and their respective heirs, beneficiaries, executors, administrators, legal representatives, successors, and assigns." The October Agreement has signature lines on the last page for the buyer and seller to apply their signatures. The following is in the October Agreement just to the left of the signature line for the seller:

10

"**AGREED AND ACCEPTED**: 10/04/2022." (Emphasis in original.) The initials and signatures were applied electronically in the October Agreement. The date and time were electronically imposed underneath the initials and next to the signatures to signify when they were applied. Nelson's signature was applied on October 4, 2022, at 3:28 PM, and his initials of "JN" were applied in the five boxes at 3:33 PM that same day. Donnie Hensley's signature was applied on October 3, 2022, at 10:37 AM and his initials of "DH" were applied in the five boxes on October 7, 2022, at 1:56 PM. The purchase price in the October Agreement is $600,000 and the amount of earnest money is $2,000. The October Agreement also provides for the following: "Inspection/Financing Period: _____ days from the Effective Date."

{¶ 27} The January Agreement is largely identical to the October Agreement, with a few notable exceptions. In the January Agreement, Hensley is identified as the buyer and Nelson is identified as the seller. There are six boxes in the January Agreement in which the parties were to apply their initials. The January Agreement states, in part: "Upon Seller's acceptance, this offer shall become a complete agreement, binding upon, and inuring to the benefit of Buyer and Seller and their respective heirs, beneficiaries, executors, administrators, legal representatives, successors, and assigns." The January Agreement has signature lines on the last page for the buyer and seller to apply their signatures. The following is in the January Agreement just to the left of the signature line for the seller: "**AGREED AND ACCEPTED**: 10/04/2022." (Emphasis in original.) Like the October Agreement, the date and time were electronically imposed underneath the initials and next to the signatures to signify when they were applied to the January Agreement. Donnie Hensley applied his initials of "DH" to five of the six boxes on January 10, 2023, at 4:45 PM. He initialed the sixth box, which related to earnest money, on January 10, 2023, at 7:33 PM.

11

Donnie Hensley's electronic signature in the January Agreement has a time stamp of 10:37 AM on October 3, 2022, which is the identical time at which his signature had been applied to the October Agreement. Nelson applied his initials of "JCN" to the earnest money box on January 11, 2023, at 12:22 PM. Nelson's initials of "JN" appear in the other five boxes with a time stamp of October 4, 2022, at 3:33 PM, which is the same date and time as the time stamp for all his initials in the October Agreement. Nelson's signature in the January Agreement has a time stamp of October 4, 2022, at 3:28 PM, which is the identical time stamp for his signature in the October Agreement. The purchase price in the January Agreement is $600,000 and the amount of earnest money is $22,000. The January Agreement also provides for the following: "Inspection/Financing Period: __30_____ days from the Effective Date."

### d. The Trial Court's Judgments

**{¶ 28}** The trial court found that the October Agreement was terminated when Hensley electronically signed a termination and release agreement on December 13, 2022. The court noted that pursuant to that termination and release agreement, "the parties mutually agreed that the October Agreement was 'null, void, and of no effect.'" Decision Overruling Hensley's Motion for Summary Judgment (Jan. 9, 2025), p. 7. The trial court then stated that it was "troubled" by the purported signature of Nelson on the January Agreement because the time stamp for Nelson's signature and all but one of his initials in the January Agreement had the same time stamp that was next to his initials and signature in the October Agreement. The court also emphasized that Hensley acknowledged that Nelson did not sign the signature line of the January Agreement or initial five of the six boxes anew. The trial court concluded:

Accordingly, it is clear to the Court that the October Agreement was successfully terminated in December of 2022, and that the parties did not mutually agree to the terms set forth in the January Agreement. The January Agreement cannot be considered a novation because "a previous valid obligation" was not extinguished by a "new valid contract." Rather the October Agreement had already been terminated, so there was no valid obligation in place at the time of the purported January Agreement, nor did the January Agreement constitute a new valid contract. Moreover, the Court further finds that the evidence and testimony before it establishes that there was no mutual assent to the terms set forth in the January Agreement, nor did Defendant Nelson fully execute the document, which Plaintiff itself acknowledges. Therefore, no valid contact exists between the parties and the Nelson Defendants are entitled to judgment in their favor as a matter of law.

*Id.* at 7-8.

{¶ 29} The trial court also granted summary judgment to the remaining defendants on Hensley's claims of tortious interference with a contract. The trial court found that the absence of an enforceable contract precluded Hensley from recovering under his claims of tortious interference with a contract.

### e. Analysis

{¶ 30} We agree with the trial court that Nelson and Nelson Ventures were entitled to judgment as a matter of law because the October Agreement had been terminated and the January Agreement was never executed by Nelson. Both Nelson and Donnie Hensley testified in their depositions that the October Agreement had been terminated. At his September 23, 2024 deposition, Donnie Hensley conceded that the October Agreement

13

contemplated a cash sale, he had relied on PNC Bank for part of the cash necessary to close the transaction, and the transaction did not close because PNC Bank did not present the money in a timely fashion. Donnie Hensley testified that he signed a termination and release of the October Agreement on December 12, 2022. At that time, he considered the October Agreement to be terminated.

{¶ 31} At his August 19, 2024 deposition, Nelson testified that he had signed the October Agreement. However, Hensley's subsequent actions made Nelson doubt whether Hensley was serious about honoring the terms of the October Agreement. For example, Nelson explained that Hensley delayed in depositing the $2,000 earnest money: "I know he did do a check or claimed that [Hensley's realtor] provided a check, to which he - - and it did not have - - it didn't have a signature line on it the first time. And then it didn't put the dollar amount the second time. And then the third check we got finally had everything." Nelson Dep. Tr. 35. According to Nelson, there was never a closing under the October Agreement due to Hensley's breach. As a result of Hensley's breach of the October Agreement, Nelson terminated it. *Id.* at 89. Nelson also received a copy of Hensley's termination of the October Agreement. In short, both Hensley and Donnie Nelson agreed that the October Agreement had been terminated.

{¶ 32} Regarding the January Agreement, it is undisputed that Nelson's signature and his initials in five of the six boxes have a date stamp of October 4, 2022. Only the box related to the $22,000 earnest money contains Nelson's initials with a January 11, 2023 date stamp. Notably, the initials Nelson applied in the earnest money box in the January Agreement are "JCN" while the initials in the other five boxes are "JN." Nelson stated that he did not initial the other five boxes and did not sign the January Agreement. Hensley conceded in its motion for summary judgment that "Nelson did not sign the signature line or

initial all of the other boxes anew." Hensley MSJ, p. 6. Nelson testified that he initialed the earnest money box to signify his willingness to consider a new offer by Hensley, but the new offer never came. Nelson Dep. Tr. 96. Even Hensley's signature in the January Agreement had a date stamp from October 2022 rather than from January 2023. The January Agreement contemplated that it would not become a complete agreement until both parties signed it. Indeed, Hensley concedes that the January Agreement required all parties to sign it. Appellant's Reply Brief, p. 10. The evidence establishes as a matter of law that the January Agreement was not signed by Nelson and was not enforceable.

{¶ 33} Hensley makes several arguments on appeal as to why these undisputed facts are insufficient to warrant granting summary judgment in Nelson's favor. We are not persuaded by Hensley's arguments. First, Hensley argues that the trial court did not indicate that it considered materials other than the pleadings when arriving at its conclusion. Hensley states that the trial court did not consider the deposition testimony because the trial court did not cite to portions of the testimony. But as we noted in our resolution of Hensley's first assignment of error, the trial court was not required to make findings of fact and conclusions of law, let alone cite to each portion of the record on which it relied. Moreover, the trial court referenced the "testimony before it," which clearly implies that the trial court considered the deposition testimony. As part of our de novo review, we reviewed the deposition testimony of Donnie Hensley and Nelson and conclude that their testimony supports the trial court's decision.

{¶ 34} Second, Hensley argues that the trial court ignored the fact that the document signed by Donnie Hensley that terminated and released the October Agreement was not signed by Nelson and was therefore merely an offer to terminate the October Agreement rather than a termination of the October Agreement. According to Hensley, the trial court

15

erred by finding that the October Agreement was terminated based solely upon the fact that Donnie Hensley had signed a termination and release of the October Agreement. As we noted above, however, both Donnie Hensley and Nelson testified in their depositions that they believed the October Agreement had been terminated.

{¶ 35} Finally, Hensley contends that the second affidavit of Chad Evans, Hensley's realtor, "clearly refutes Nelson's assertion that Nelson did not sign the January Agreement." According to Hensley, the averments in Evans' second affidavit and the "Dotloop Activity Log" establish that Nelson signed the January Agreement. We have reviewed the two affidavits of Chad Evans and do not agree with Hensley's assertion. The "Dotloop Activity Log" attached to Chad Evans's second affidavit appears to set forth the times at which individuals electronically accessed the October Agreement and the January Agreement. This log, however, does not create a genuine issue of material fact as to whether Nelson signed the January Agreement or initialed all the boxes "anew." Rather, the evidence of record establishes that Nelson only initialed the earnest money box in the January Agreement. Nelson's initials in the other five boxes and his signature in the January Agreement are time-stamped with the same date and time from the October Agreement, which had been terminated. Given Hensley's concession that Nelson did not sign the January Agreement or initial the other boxes anew, we cannot conclude that the trial court erred in finding that the January Agreement was unenforceable. Therefore, the trial court did not err in granting summary judgment to Nelson and Nelson Ventures on Hensley's complaint.

{¶ 36} The second assignment of error is overruled.

16

**IV.    The Trial Court Did Not Err in Granting Summary Judgment on the Tortious Interference Claims**

{¶ 37} Hensley's third and fourth assignments of error state:

The trial court committed prejudicial error by sustaining the summary judgment motions of Craig Kellogg d/b/a the Agora Realty Group, Sandra Kellogg, Rick Feltner, and the Fields of Moraine, LLC.

The Trial Court Committed Prejudicial Error By Sustaining National Title Company's Motion for Summary Judgment.

{¶ 38} Hensley contends that the trial court erred in granting the summary judgment motions filed by defendants-appellees National Title Company, Craig Kellogg, Sandra Kellogg, Feltner, and the Fields of Moraine, LLC.   In its amended complaint, Hensley alleged that these defendants intentionally interfered with the contractual relationship between Hensley and Nelson.

{¶ 39} The elements of tortious interference with a contract include "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 1995-Ohio-61, ¶ 15.   "Absent evidence of a contract, the first element of the tortious interference with a contract claim fails."   *Daly v. Certo*, 2025-Ohio-293, ¶ 86 (2d Dist.), citing *Ettayem v. Ramsey*, 2019-Ohio-675, ¶ 22 (10th Dist.).

{¶ 40} The trial court found that National Title Company, Feltner, Craig Kellogg, Sandra Kellogg, and Fields of Moraine, LLC were entitled to summary judgment on Hensley's tortious interference claims because there was no enforceable contract between Hensley and Nelson.   Given our conclusion that the trial court did not err by granting

17

summary judgment to Nelson and Nelson Ventures based on the absence of an enforceable contract, it necessarily follows that the trial court also did not err by granting summary judgment against Hensley on its claims of tortious interference with a contract. *Daly* at ¶ 86.

{¶ 41} The third and fourth assignments of error are overruled.

### V. The Trial Court Did Not Err in Granting Civista Bank's Motion for Summary Judgment

{¶ 42} Hensley's fifth assignment of error states:

The Trial Court Committed Prejudicial Error by Sustaining the Motion of Civista Bank for Summary Judgment.

{¶ 43} The trial court granted Civista Bank's motion for summary judgment on Hensley's complaint. The court found that Civista Bank was a bona fide purchaser for value and that it gave a mortgage on the Property "in good faith, for value, and without actual or constructive notice of [Hensley's] dispute in the real property." Therefore, the court granted judgment in favor of Civista Bank as to the relief Hensley sought against Civista Bank and found that any subsequent judgment issued on the remaining claims "shall be subject to the Civista Bank mortgage."

{¶ 44} Hensley argues that the trial court erred in finding that Civista was a bona fide purchaser for value because it failed to purchase anything. Further, Hensley contends that the trial court erred in finding that Civista "gave" a mortgage when it in fact "took" a mortgage. According to Hensley, Civista Bank and National Title Company created the dispute that culminated in the filing of Hensley's lawsuit. Hensley believes Civista Bank was not entitled to summary judgment because Civista Bank took a mortgage on the Property with Nelson at a time when Civista Bank was aware that Hensley had equitable title to the Property through the January Agreement.

18

**{¶ 45}** Hensley's claim against Civista Bank is contingent upon the enforceability of the January Agreement. As explained above, the trial court did not err in finding that the January Agreement was not an enforceable contract. Therefore, Civista Bank was entitled to summary judgment on Hensley's claim against it.

**{¶ 46}** The fifth assignment of error is overruled.

## VI.    Conclusion

**{¶ 47}** Having overruled all the assignments of error, we affirm the judgments of the trial court.

. . . . . . . . . . . . .

EPLEY, J., and HANSEMAN, J., concur.